### S. L. GRAVES v. THE STATE.

#### No. 327. Decided January 19, 1910.

**1.—Assault to Murder—Threats—Charge of Court—Statutes Construed.**

Where, upon trial for assault with intent to murder, there was evidence of threats and self-defense, and the charge of the court attempted to define what the threats must consist of, and what the party injured should do in order to justify defendant on the grounds of threats, the same was reversible error under article 713, Penal Code.

**2.—Same—Charge of Court—Blending of Defenses.**

Upon trial of assault with intent to murder, where the defense was threats and self-defense, and the court in his charge blended the law of self-defense, both real and apparent danger, with the law of threats, and required the jury to find affirmatively the different acts of the deceased towards the defendant, before they could acquit on the ground of self-defense, the same was reversible error. Following St. Clair v. State, 49 Texas Crim. Rep., 479, and other cases.

**3.—Same—Evidence—Exhibiting Wounds to Jury.**

Upon trial for assault with intent to murder, where it appeared that the party injured had been operated upon by physicians, and his wounds enlarged so as to treat them properly, an exhibition of the scars of the wounds and the wounds to the jury was inadmissible.

**4.—Same—Evidence—Expert Testimony.**

Upon trial for assault with intent to murder, there was no error in permitting physicians who had examined the wounds of the party injured to testify that the bullet entered in the shoulder behind, and came out at the top of the shoulder near the collar-bone in front, as this was not expert testimony, but could have been testified to by any one who knew the facts; besides, the same testimony appeared from other witnesses.

**5.—Same—Evidence—Res Gestae.**

Upon trial for assault with intent to murder there was no error in admitting testimony that the prosecuting witness, in about fifteen minutes after the shooting, said that he did not mind dying, but he hated to be shot in the back when he was unarmed; this was res gestæ.·

Appeal from the District Court of Jones. Tried below before the Hon. Cullen C. Higgins.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Cunningham & Oliver* and *Thomas & Chapman* and *S. H. Glasgow,*

for appellant.—On the question of the court's charge on self-defense and threats: Buckner v. State, 55 Texas Crim. Rep., 511, 117 S. W. Rep., 802; Huddleston v. State, 54 Texas Crim. Rep., 93, 112 S. W. Rep., 64; Watson v. State, 50 Texas Crim. Rep., 171, 95 S. W. Rep., 115; Cohen v. State, 53 Texas Crim. Rep., 422, 110 S. W. Rep., 66; Mitchell v. State, 50 Texas Crim. Rep., 180, 96 S. W. Rep., 43; Bonner v. State, 29 Texas Crim. App., 223, 15 S. W. Rep., 821, and cases cited in opinion. On question of admitting evidence as to entry of bullet: Smith v. State, 99 S. W. Rep., 100; Ripley v. State, 51 Texas Crim. Rep., 126, 100 S. W. Rep., 943; Cabrera v. State, 56 Texas Crim. Rep., 141, 118 S. W. Rep., 1054; 18 Cyc., p. 1504. As to question of exhibiting wounds to jury: Barkman v. State, 41 Texas Crim. Rep., 105, 52 S. W. Rep., 73; Young v. State, 49 Texas Crim. Rep., 207, 92 S. W. Rep., 841.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—This is an appeal from a conviction for assault with intent to murder with a penalty of two years.

On the trial of the case in the court below, appellant established by two witnesses, to wit, Overfelt and Hart, that some days previous to the shooting of the prosecuting witness Sayers by appellant, said Sayers had used violent and abusive language to the witness Hart and at the same time the prosecuting witness Sayers made very serious threats against the life of appellant, Sam Graves, and stated that he would see appellant; that one or the other of them had to bite the earth, and that he had just as soon die now as to die further up the creek. This statement was substantially proved, as before stated, by the witnesses Overfelt and Hart. At the time of the shooting, the State's witnesses contended, it was an uncalled for and an unnecessary shooting, and that at the time that appellant shot the prosecuting witness, Sayers, Sayers was doing nothing but riding away from the appellant and was shot off of his horse, or shot and the horse went off some fifty or sixty yards when the witness stopped him and got off. The appellant claimed that in the manner that the prosecuting witness and his brothers and friends approached him and the hostile demonstration made at the time, that he believed that the prosecuting witness was going to kill him and that he shot in self-defense.

The case was submitted to the jury on assault to murder, aggravated assault, self-defense and threats, and on the subject of threats the court charged the jury as follows: "If you believe from the evidence in this case that the defendant, S. L. Graves, did shoot Farley P. Sayers, in King County, Texas, on or about the 5th day of September, 1907, and either with or without the specific intent to kill the said Farley P. Sayers, but that prior to the time of so doing the said Farley P. Sayers had cursed and used violent and abusive lan-

guage concerning the defendant and threatened the defendant with having to bite the dust when he met him, and that said threats, if any, in substance were communicated to the defendant prior to the time of said shooting, and that the defendant and said Farley P. Sayers met at the Pitchfork Roundup, and that at the time of said meeting the said Farley P. Sayers leaned forward as if to dismount and made a movement with his right hand as if to draw a weapon from his bosom and used threatening language at the time to the defendant, all of which either considered alone or considered with the defendant's knowledge of the character and disposition of the said Farley P. Sayers, or for either of said causes or any other cause disclosed by the evidence, caused the defendant to have a reasonable apprehension of death at the hands of said Sayers, or that serious bodily injury was about to be inflicted upon him at the hands of said Sayers and that said Sayers was about to carry out and put into execution such threats so made against him, if any, by said Sayers as all the facts and circumstances in evidence were viewed from the standpoint of the defendant at the very time of the shooting, and that acting upon the appearance of danger as he saw it from his standpoint at the time the defendant shot the said Farley P. Sayers, then the defendant had the right to use all necessary force to repel such attack or threatened attack, if any, to protect his life or person from such serious bodily injury even to the extent of killing his assailant, and if you so believe, or have a reasonable doubt thereof, you will acquit the defendant." This charge was complained of by appellant in his motion for a new trial and its correctness vigorously assailed in the court below, and presented before this court with earnestness and energy. We are of opinion that this charge was erroneous in several respects. It is more onerous than the statute requires; it blends and confuses the defenses arising from real danger and apparent danger; it not only enlarges upon the statute on the subject of threats, but it is an attempt on the part of the court below to define what the threats shall consist of and what the party shall do in order to justify on the grounds of threats. Article 713, White's Penal Code, provides: "Where a defendant accused of murder seeks to justify himself on the ground of threats against his own life, he may be permitted to introduce evidence of the threats made, but the same shall not be regarded as affording a justification for the offense unless it be shown that at the time of the homicide the person killed by some act then done manifested an intention to execute the threat so made. In every instance where proof of threats has been made it shall be competent to introduce evidence of the general character of the deceased. Such evidence shall extend only to an inquiry as to whether the deceased was a man of violent or dangerous character, or a man of kind and inoffensive disposition, or whether he was such a person as might reasonably be expected to execute a threat made." It will be seen by

this article that a party would be justified in killing his adversary if at the time of the homicide the person killed by some act then done, manifested an intention to execute the threats so made. The statute does not attempt to define of what this act shall consist. It does not say that if the party shall throw his hand to his hip or that he shall draw his gun, or that he shall advance or that he shall strike with his fist. It leaves it to the jury to determine from the conduct and manner of the party what the act is. And for the court to attempt to define what the act shall be, would be an attempt on the part of the court to legislate into the statute terms not authorized. Said charge is erroneous and more burdensome than the law in that it blends the law of self-defense, both real and apparent danger, with the law of threats and requires that the jury shall find affirmatively that Farley P. Sayers leaned forward as if to dismount and made a movement with his right hand as if to draw a weapon from his bosom and used threatening language at the time to that effect, which caused appellant to have a reasonable apprehension of the threats at the hands of Sayers or serious bodily injury, before he would have a right to shoot in his own self-defense, or to shoot in the belief that said Sayers was about to execute said threats. See St. Clair v. State, 49 Texas Crim. Rep., 479, 92 S. W. Rep., 1097; Swain v. State, 48 Texas Crim. Rep., 98, 86 S. W., 337, and Lockhart v. State, 53 Cr. Rep., 589. Without reference to the decisions made by this court upon this subject it will be sufficient to simply read the statute upon the subject of threats which in itself shows that the charge given by the court below is erroneous and is such error that the case will have to be reversed.

There are several other questions presented in the record that perhaps it would not be ill advised to notice. The first bill of exceptions relates to the action of the court in permitting the witness Sayers, over the objection of appellant, to exhibit the wounds and scars to the jury on the ground that these scars were not in the condition that they were immediately after the shot had been fired, because the party injured had been operated upon by physicians and the wounds enlarged so as to treat the internal injuries, and that his shoulder had been cut open, and that this could throw no light upon the issue in the case as to whether witness was shot in the front or the back. The proof showed that the physicians had operated upon the witness and had made incisions in front and back and that the wounds were not in the condition they were immediately after the shooting, therefore, we can not see how an exhibition of the scars could throw any light upon the issue as to whether witness was shot in the front or back. It was error to allow witness to exhibit the wounds, and appellant's objection should have been sustained.

Objection was made by the appellant to the action of the court in permitting Dr. Graham and Dr. Blackwell to testify to the following:

"The bullet entered Farley P. Sayers, the prosecuting witness, in the shoulder behind, and came out at the top of the shoulder near the collar bone in front." This evidence was objected to on the part of the appellant because the witness had not sufficiently qualified as an expert to testify to his opinion as to which way the ball passed through the body, and had not shown himself to be present or to be in position personally to testify as to its course, and because said evidence was a conclusion and is a matter upon which even an expert could not testify, and was a conclusion that the jury had a right to draw from the evidence and was calculated to injure the rights of appellant. The judge appends to the bill of exceptions the following qualification: "These two doctors dressed the wounds inflicted upon Sayers and operated upon Sayers for the bullet which they took out in pieces, although they did not recover it all, and testified that the wound in the back was the only opening made upon Sayers by the bullet, which was large enough to admit the bullet, and that the only other opening made in the skin of Sayers was a three in shape wound, in which was lodged a small three-cornered piece of metal cover that encased the bullet before firing, and that the metal piece slightly protruded from the front wound and was taken out at the front by the doctors, and that the parts of bullet taken out were followed from the wound in the back even by two fingers of the doctor's hand, and that the front wound was cut open, and that with the eye they could see through the shoulder of Sayers, and that the largest portion of the bullet of all was taken out of Sayers' neck to the right and above the wound in the front and could be traced from the back wound with the probe but not from the front wound at all, all of which were physical facts and required no expert testimony, but could have been testified to by anyone who knew the facts." An inspection of the statement of facts and the testimony of these doctors shows that the wounds inflicted went in from the rear. As stated by the court below, it did not require a man skilled in the knowledge of surgery or anatomy to have discovered these facts. There was a wound large enough to admit the ball in the rear. This ball, after it entered the body and struck the shoulder blade, split to pieces and several of these pieces were taken out in front, and we can not see that the opinion of the doctor that it was fired from the rear could either be hurtful or prejudicial in this case. Even the appellant and his witness Oldham testified that when he fired the prosecuting witness was attempting to alight from his horse and threw rather the side and back of his body to the appellant. In some cases the opinion of experts, or the opinion of people who are nonexperts, might become injurious, but in the light of the record in this case we can not see how it was hurtful.

Bill of exceptions No. 4 relates to the action of the court in permitting the State, over the objections of appellant, to prove that the prosecuting witness Sayers, in about fifteen minutes after the shooting,

said that he did not mind dying, but he hated to be shot in the back when he was unarmed. This testimony was objected to on the ground that it was too remote from the immediate transaction of the shooting to come within the rule of res gestae evidence. The court, in qualifying this bill, states: That when defendant shot Sayers, Sayers' horse ran to a tree between 100 and 250 yards away. Defendant followed after within about 100 to 60 yards of Sayers, who was on the ground and lying with his head on his brother's knee, and holloed to the witness Sayers, brother of the injured party, to get out of the way and let him finish the son-of-a-bitch, when the brother stated not to shoot any more, as he would be dead in fifteen minutes, and the defendant turned and rode off, and this was about fifteen minutes after the shooting. We are of opinion that this testimony was admissible as res gestae and came clearly within the rule announced by this court in the case of Bronson v. State, recently decided by this court. This, we think, disposes of all the questions raised in this appeal, and for the error of the court, in its charge upon the subject of threats, the case will be reversed and the cause remanded, which is accordingly done.

*Reversed and remanded.*