## WILL MASON v. THE STATE.

### No. 6361.  Decided November 16, 1921.

Rehearing denied January 18, 1921.

**1.—Murder—Continuance—Want of Diligence.**

Where, upon trial of murder the application for continuance showed a want of diligence, there was no error in overruling same.

**2.—Same—Evidence—Conversation—Cross-Examination.**

Where, upon trial of murder the defendant objected to certain testimony brought out on cross-examination, but the record on appeal showed that it was a part of the same conversation which had been testified to by appellant on his direct examination, and shed light on the action of the parties at the time and immediately preceding the homicide, there was no error in its admission.

**3.—Same—Evidence—Rebuttal.**

Where defendant had admitted that he had told deceased a few nights before the homicide that his sister was at a certain time running a sporting house, there was no error in permitting the lady in rebuttal to testify that this was not true.

**4.—Same—Evidence—Cross-Examination — Contradicting   Witness — Moral Turpitude—Suspended Sentence.**

There was no error on cross-examination of defendant, who had testified for himself, to ask him how long he had been out of the Federal penitentiary, and this although the homicide for which he was being tried was committed before his conviction in the Federal court, the question of suspended sentence being involved in the case.  Following Williams v. State, 83 Texas. Crim. Rep., 26.

**5.—Same—Details of Other Offenses.**

The only inquiry made of defendant by the State was, if it was not for a conspiracy to sell liquor to the soldiers at Ft. Worth, that he was convicted, and no details of the manner of the commission of the offense were inquired into, there was no reversible error.

**6.—Same—Evidence—Copy of Judgment—Suspended  Sentence—Charge of Court.**

Where, upon the question of suspended sentence, the State introduced a copy of the judgment of conviction from the Federal Court, over defendant's. objection, there was no reversible error inasmuch as defendant had already admitted that he was so convicted of an offense in the Federal Court; and the court limiting said questions to that of suspended sentence, there was no reversible error.

**7.—Same—Requested Charge—Practice in Trial Court.**

Where appellant excepted to the charge of the court in many particulars, but it is found on examination of the record that the corrections must have been made in the court's charge, as the same is not subject to complaints, as urged, there was no reversible error.

**8.—Same—Rehearing—Charge of Court—Apparent Danger—Actual Danger.**

Where a certain paragraph of the court's charge was assailed as a restriction upon the right of the appellant, in failing to make available the law

of apparent danger, but it appeared from the record that the actions of deceased had passed beyond the point of preparation for attack, and defendant was called upon to defend against actual danger, there was no reversible error in the court's main charge on this phase of the case. Following Simmons v. State, 55 Texas Crim. Rep., 448, and other cases.

9.—Same—Provoking Difficulty—Charge of Court—Converse Propositions.

Where the court's charge on provoking the difficulty, with reference to the right of self-defense, did not depart from the principles governing that issue, but chose language which was in full consonance with approved precedent, there was no reversible error; and there being no complaint to the court's failure to charge the converse of the proposition, there was no reversible error.

Appeal from the District Court of Johnson. Tried below before the Honorable Irvin T. Ward.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*J. B. Haynes,* for appellant.—On question of charge of court on apparent danger: Carlisle v. State, 232 S. W. Rep., 824.

*R. H. Hamilton,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—This is an appeal from a conviction for murder in which five years in the penitentiary was assessed.

On two occasions prior hereto has this case been reviewed. The first opinion will be found reported in 72 Texas Crim. Rep., 501, 163 S. W. Rep., 66; the second in 79 Texas Crim. Rep., 169, 183 S. W. Rep., 1153.

Much of the evidence from the standpoint of both the State and appellant is shown in the former opinions, and will not be repeated here except as it may be necessary to discuss intelligently some bill of exceptions.

Application for continuance on account of the absence of Mrs. F. P. Mason, appellant's mother, and Mrs. Grace Woody, his sister, was overruled. There was no error in this. No diligence whatever is shown. It is stated that "he has heretofore had subpoenas issued out of this court for both of said witnesses." When they were issued, what became of them, whether they were served, none of these things are shown. It is stated that the witnesses have attended upon the court at all former terms, when the case was called, and that "defendant has notified said witnesses of the date set for trial." All of this might be true, and yet no legal diligence is shown. This was appellant's sixth application for continuance, four of which had been granted. So many authorities are available on the lack of diligence shown, we deem it entirely unnecessary to refer to them. They will be found collated under Sections 314, 315, Branch's Ann. P. C.

90 T. C.—36

It was the theory of appellant that the homicide was the culmination of a long series of uncalled for and unprovoked abuse and overbearing conduct by the deceased towards appellant. It was the theory of the State that the trouble occurring in the field a short time before the homicide was immediately brought about on account of some insulting remarks made by appellant regarding deceased's sister a few nights before. Bill of exceptions No. 2 sets out several questions and answers which were propounded to, and answered by appellant, on cross-examination, and recites that appellant objected to such testimony at the time it was brought out by the State. The bill is not entirely satisfactory. The qualification of the trial judge shows it was a part of a conversation testified to by appellant on his direct examination, and an examination of the record discloses that this is true. Appellant, on his direct examination, had testified that a few nights before the homicide he had made a statement to his, appellant's brother, not knowing that deceased was present or within hearing distance; "that he had moved Cora Shelton's piano for her, and that she and her 'pimp' were going to Amarillo," and that then for the first time he learned of deceased's presence when he challenged the statement. On cross-examination of appellant it was developed that in this same conversation he told deceased that he had rented his sister, Cora Shelton, a piano while she was living at Fort Worth, and that she was running a "sporting house" at that time, and was asked if it was not upon that statement being made by him that deceased cursed him and told him to come outside of the yard and repeat the language. We are unable to discover any error in the ruling of the court in the admission of this testimony. It was part of the same conversation which had been testified to by appellant on his direct examination and shed light on the actions of the parties at the time and immediately preceding the homicide. Appellant also complains because the court permitted Mrs. Cora Franks, formerly Cora Shelton, to testify in rebuttal to the statement made by appellant that she had never run, or had been in any way connected in the operation of a "sporting house" in the city of Fort Worth. Appellant had admitted that he had told deceased a few nights before the homicide that his sister was at a certain time running a "sporting house" in the city of Fort Worth. We have been unable to discover any ground for the complaint of appellant, that this lady was permitted to say in rebuttal that this was not true.

While appellant was testifying he was asked upon cross-examination how long he had been out of the Federal penitentiary, to which he replied that he believed it was the 7th day of February, 1919, that he was released, and in reply to a question answered that he was sentenced to the Federal penitentiary by the Federal court at Fort Worth on April 20, 1918, for a conspiracy to sell liquor to the soldiers at the camp there. Many objections were urged to eliciting this information from appellant; one because the homicide for which he was being tried were committed in 1912, and the conviction in the Federal court oc-

curring many years subsequent thereto, evidence thereof was not admissible, and because the State was eliciting the details of the offense of which he was convicted in the Federal court. In the instant case appellant filed an application for suspended sentence. It was permissible on this issue for the State to show that he had been convicted and sentenced to the Federal penitentiary. It would be immaterial whether the conviction inquired about occurred prior or subsequent to the date of the offense for which he was on trial. When the question of suspended sentence became an issue the character of accused at the time of the trial, the time he is seeking a suspended sentence, is the matter which the jury is to determine, and not alone his character prior to the time of the alleged commission of the offense for which he is on trial. Williams v. State, 83 Texas Crim. Rep., 26, 201 S. W. Rep., 188.

We cannot agree to appellant's complaint that the State was permitted to go into the details of the Federal offense. The only inquiry made of him was if it was not for a conspiracy to sell liquor to the soldiers at Fort Worth. That was the offense itself; no details of the manner of the commission of the offense being inquired into.

After this admission on the part of appellant, the State, over his objection, was allowed to introduce a copy of the judgment of conviction from the Federal court. Many objections were urged by appellant to the admission of this instrument. Without discussing the objections in detail we will dispose of the matter upon the ground that we have been unable to discover where any injury could have resulted to appellant, even though the copy of the judgment was erroneously admitted. It showed, and could have shown no more than appellant had already admitted, to-wit: that he had been convicted in the Federal court of a conspiracy to sell intoxicating liquor to the soldiers. The court in his charge limited all of this testimony to a consideration of the question of whether the jury would suspend sentence in the event they convicted appellant.

Appellant excepted to the charge of the court in many particulars, to all of which we have given careful attention. The paragraphs of the charge to which special exceptions were directed have been examined by us in the light of the exceptions, and if any foundation existed for the exceptions at the time they were presented, corrections must have been made where objectionable features were pointed out by the exceptions, because the charge as it now appears in the record is not subject to the complaints urged.

After a careful review of the record before us we discover no error which would authorize a reversal of this judgment, and the same is therefore ordered affirmed.

*Affirmed.*

ON REHEARING.

January 11, 1922.

MORROW, Presiding Judge.—We have considered the questions raised in the motion for rehearing in the light of its interesting oral presentation by counsel.

The criticisms of the court's charge, while not discussed in detail, were not overlooked on the original hearing. We yet hold the view that it was not subject to any of the faults pointed out in the exceptions.

Paragraph 11a is assailed as a restriction upon the right of the appellant in failing to make available the law of apparent danger. The paragraph mentioned is one in which the jury was instructed upon appellant's right to arm himself and seek an interview with the deceased for a peaceful and lawful purpose, and therein it is said:

". . . and if you believe from the evidence that the defendant so approached the deceased, with such purpose in view, and that when he did so, if he did, the deceased made an attack upon the defendant with a rock, if he did so, and that the defendant, acting in his self-defense as hereinbefore defined, shot and killed the deceased, or if you have a reasonable doubt as to whether he so acted or not you will give him the benefit of such doubt and find him not guilty."

Immediately preceding the paragraph mentioned, in Paragraph 11, the jury was thus instructed:

"Now, if you believe from the evidence that the defendant shot and killed the deceased, and if you further believe that at the time he did so it reasonably appeared to the defendant, viewing it from his standpoint, under all the circumstances preceding and surrounding him at the time, that the deceased was about to make an attack, or was making an attack on him with a rock and the defendant at the time shot the deceased, if he did so, believed that he was in danger of being killed or suffering serious bodily injury at the hands of deceased, then the defendant was not bound to retract, but had the right to shoot deceased and to continue to shoot until he believed himself out of danger, and if you believe the defendant so acted in shooting deceased, if he did so, or if you have a reasonable doubt whether he did so act, you will acquit him and say by your verdict 'Not guilty.' "

From the State's standpoint, as developed by its witnesses, there was no demonstration made by the deceased. According to the version of appellant and his witnesses, the act of the deceased at the time of the homicide upon which he predicates the theory of self-defense is that upon his coming into the field where deceased was picking cotton, appellant spoke to him and deceased threw off his sack and stooped down and picked up a rock, and as he came up the appellant shot. Appellant, after detailing various previous difficulties, one on the same day, in which deceased had drawn a knife on him,

said: "When I got back to the field I walked up to six or eight feet of Oscar Shelton, he was picking cotton. I walked up and said: 'Well, Jackie, it seems like we cannot get along,' and about that time, with an oath, he threw his sack off, stooped down and picked up a rock and started to throw it, and I pulled my revolver and fired the first shot because I thought he was carrying out his threat. I thought he was going to kill me with the rock." The act of deceased, as described by the appellant, would seem to have passed beyond the point of preparation for attack and reached the point which called upon appellant to defend against actual danger. Simmons v. State, 55 Texas Crim. Rep., 448; Cavil v. State, 25 S. W. Rep., 628. We note that the extent of the force used in repelling the attack is not involved.

In submitting the law of provoking the difficulty as a qualification of the right of self-defense, the court did not depart from the principles governing that issue but chose language which, so far as we are able to discern, was in full consonance with approved precedents.

In his motion for rehearing appellant says:

"The jury are in substance instructed in the XII paragraph of the charge that if they find that the appellant provoked the difficulty for any purpose, he has no right of self-defense, but must be convicted of murder or manslaughter."

The charge told the jury, in substance, that if the appellant, with intent to kill the deceased or to do him injury by some act reasonably calculated to bring about the occasion and thereby provoke the deceased to attack him, he could not use the attack thus provoked to justify the homicide, but under such circumstances would be guilty of murder or manslaughter, according to the intent with which he acted. In conveying this information to the jury, the language selected by the court was in substance like that quoted and commented upon in other cases. See Woodward v. State, 54 Texas Crim. Rep., 86; Young v. State, 53 Texas Crim. Rep., 244; Robertson v. State, 83 Texas Crim. Rep., 244; Mason v. State, 88 Texas Crim. Rep., 646.

The charge on the law of provoking the difficulty was not wrong in that it made the jury understand that if appellant fired the fatal shot in defending against an attack which he had intentionally provoked by the use of means reasonably adapted to that end with the intent to kill the deceased or do him serious bodily harm, his offense was murder, but if he had no intent to kill or do serious bodily harm, but intended to do some lesser harm, he still would not have the perfect though he might have had the imperfect right of self-defense. Jones v. State, 17 Texas Crim. App., 611; Branch's Texas Crim. Law, Sec. 464. In framing the charge to convey this information to the jury, there was no error. It is appropriate in connection with the charge upon this subject to instruct on the converse of the State's theory. Mason v. State, *supra,* and authorities therein cited. The failure of the court to do so in the instant case was not made the basis of com-

plaint in an exception to the charge. Doubtless if it had been, the charge would have been made more specific in that respect.

The motion is overruled.

*Overruled.*