## Vannie Cassel v. The State.

### No. 7139.   Decided January 17, 1923.

### Rehearing Granted February 21, 1923.

**1.—Arson—Accomplice—Evidence—Other Offense—Motive.**

Where, upon trial as an accomplice to arson, the State introduced testimony showing that there was a fire in defendant's place of business some weeks prior to the one described by the evidence in the instant case, there was no reversible error under the facts in the instant case to show that defendant prior to the alleged fire in the instant case had advised, commanded, and encouraged the principal witness in the State to set said fire and to burn said building.

**2.—Same—Evidence.**

Upon trial of accomplice to arson, there was no error in admitting testimony of the sheriff and another witness that at about sundown, in the afternoon preceding the night of the fire, they had a conversation with each other (no part of which was testified to); that thereafter they watched the building, and caught defendant in the act of burning same.

**3.—Same—Evidence—Reputation for Honesty—Different Territory.**

Where defendant placed his reputation for honesty and for being a law-abiding citizen, and also for truth and veracity in issue, in the community where he formerly lived, there was no error in permitting the State to show that the general reputation of the defendant at the time of the trial for truth and veracity was bad in the place where he was being tried, although the witnesses admitted that they had heard nothing against defendant prior to the fire in question.

**4.—Same—Charge of Court—Accomplice.**

Upon trial of accomplice to arson, there was no error in refusing to submit a charge on accomplice testimony with reference to the witness, Bradford, under the facts in the instant case.

**5.—Same—Requested Charges—Practice in Trial Court.**

Where, upon trial of accomplice to arson, the charge of the trial court was full and fair, there was no error in refusing requested charges which did not submit a correct theory of the law applicable to the facts.

**6.—Same—Charge of Court—Accomplice.**

In the absence of testimony, there was no error in refusing to submit a charge on accomplice's testimony relating to the witnesses who were watching the building alleged to have been burned.

**7.—Same—Argument of Counsel.**

Where the court refused the requested charge asked by the defendant to instruct the jury not to consider the argument of the State counsel, to-wit: not to worry about the principal State witness, there was no reversible error.

8.—Same—Sufficiency of the Evidence.

Where, upon trial of an accomplice to arson, the evidence sustained the conviction, there was no reversible error on that ground.

.9.—Same—Rehearing—Cross Examination—Impeaching Testimony.

Where, upon trial of an accomplice to arson, a State's witness testified that ueiendant, a rew days before the fire had made a proposition to him to pad the books, and burn the building, that the witness declined, and severed his employment with the appellant; defendant should have been permitted on cross-examination to ask the witness if it was not a fact that on the day after the fire, he in conversation with one Thomas, had stated that he had found the defendant to be as honest, as honorable, and as clean a man as he had ever had any dealings with.

10.—Same—Impeaching Witness.

Where appellant was denied to cross-examine a State witness as to a declaration of defendant's good character to another witness, he should have been permitted to impeach him if he denied the statement.

Appeal from the District Court of Franklin. Tried below before the Hon. R. T. Wilkinson.

Appeal from a conviction of accomplice to arson; penalty, two years in the penitentiary.

The opinion states the case.

*Beavers & Mansell,* and *Dial, Melson, Davidson & Brim,* for appellant—On question of impeaching witness; Sanders. v. State, 112 id., 68; Hopkins v. State, 180 id., 1094; Baker v. State, 187 id., 951.

C. L. Stone, Assistant Attorney General.—On question of impeaching State's witness: Davis v. State, 155 S. W. Rep., 550; Burnham v. State, 133 id., 1045; Jennings v. State, 132 id., 475.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Franklin County of the offense of being an accomplice to the crime of arson, and his punishment fixed at two years in the penitentiary.

It appears in the record without dispute that on the night of July 19th, 1921, a store house belonging to J. M. Dupree and others and occupied by appellant as a place of business, was set on fire be Ferman Sharber, who was caught in the act. Sharber testified for the State herein claiming that he set this fire and another which occurred some weeks earlier at the instigation and upon employment of appellant. Sharber was necessarily an accomplice witness. The question of the sufficiency of the testimony to corroborate him has given us trouble.

John Bradford testified that he and Sharber worked for appel-

lant, they being the only employees. That on Wednesday before the fire on July 19th, which was the Monday following, appellant came to him and asked him if it would suit him to "Pack the books and have the building burned and he be in Winnsboro." Witness said he told appellant it would not suit him at all. On cross-examination this witness said that it was on Wednesday and that appellant "asked me to pack the books and burn the building. He told me he had been thinking about it, and wanted to know how it would suit me, and I told him it would not suit me." Bradford was discharged on Saturday following this Wednesday. On Monday night the building was set on fire by Sharber. Appellant went to Winnsboro in Wood County that afternoon and was in Winnsboro at the time of the fire. Sharber swore that appellant had employed him to set said fire. The fact that appellant sought Bradford's service to burn said building while he was absent at Winnsboro, would be a circumstance tending to show that appellant had employed Sharber to set said fire. That there be evidence besides that of the accomplice, tending to connect the accused with the crime, is all that our law requires. The jury may legally convict upon the testimony of an accomplice who details sufficient facts, if the facts be believed, and there be other testimony beside which tends to connect the accused with the commission of the offense.

Appellant's first three bills of exception present his various objections to testimony showing that there was a fire in appellant's place of business some weeks prior to the one directly here involved. The State witness Sharber swore that pursuant to an agreement between himself and appellant he set fire to appellant's stock of goods about a month before the instant fire and that as the result of this fire here was only a partial loss to the stock of goods. Sharber said that he took kerosene from his home to the store that night about 12:30 o'clock, carrying it in a tin syrup bucket; that he met Irvin Case. Irvin Case testified that on the night of the first fire about 12:30 as he was going home he saw Sharber with a tin syrup bucket coming from the direction of appellant's place of business, and that the next morning he told a Mr. James about this, and a little later told appellant. James testified that a little later he also told appellant what Case had told him. Appellant asked each of them to keep this quiet and to say nothing about it. The sheriff of the county testified that he investigated the first fire and talked to appellant about the occurrence, but that appellant at no time told him that Ferman Sharber had been seen with a tin bucket that night. We believe the testimony relative to the first fire was admissible. The factus probandum of the instant case was not the burning on July 19th, though that was material, but was the fact that prior to said fire appellant had advised, commanded or encouraged Ferman Sharber to set said fire and to burn said building. Sharber testified that

before the first fire appellant promised to pay him between four and five hundred dollars to burn the building, and that after the first unsuccessful attempt to do this, appellant told him he had made a poor job of it and would have to try it again, and that carrying out his said agreement and after further conferences with appellant he set fire to the property on the occasion herein charged. Any testimony lending color to the proposition that Sharber was acting in collusion with appellant in either fire would be admissible on this trial in support of the main fact sought to be proved, i. e., that what was done by Sharber in the instant case was at the instigation of appellant. It could hardly be claimed that proof of the fact that prior to the first fire appellant had been heard to promise to pay Sharber to burn the building, the first effort at which was not successful, would not strongly support a claim by Sharber that his agreement with appellant also induced him to make the second attempt. That appellant had assisted Sharber to escape punishment, evade prosecution or avoid detection as the originator of the first fire, would tend to shed light on the fact that both men were implicated therein, and also that appellant was implicated in the second fire. We think it a sound proposition that an act whose establishment by proof aliunde, would make of the actor an accomplice witness, whether as an accessory or an accomplice,—would be admissible in testimony when issue was joined in the prosecution of such actor as an accomplice, under the terms of our Penal Code. Applying this, we observe that Sharber swore that he set fire to the place in question, as stated above, about a month before the instant fire and gave details of his carrying in a bucket to the store the kerosene, which he used in his attempt to burn the building. Case saw Sharber at 12:30 that night with said bucket and so informed appellant. Appellant told Case to say nothing about this to anyone, and also told James, as above stated, to say nothing about it. The fact of such concealment of this material evidence affecting Sharber's guilt of arson at that time, would be of weight as reflecting appellant's guilty connection with the matter.

By two bills of exception appellant presents his objection to testimony of Sheriff Moore and John Bradford that about sundown on the afternoon preceding the night of the fire they had a conversation with each other. No part of said conversation was testified to. The fact that following same the officer watched the building in which appellant's business was located, and caught Sharber in the act of burning same, seems in nowise to inject error into the record claimed to be based on the admission of the statement of each of said parties that they had a conversation. We have examined the authorities by appellant but find them of no application. That a sheriff talks to a defendant in jail and immediately orders the arrest of other parties, might get before the jury the effect of unwarned statements of one under arrest, but we have no such case before us.

Appellant sought to show that the morning after the fire witness Bradford was approached by one Thomas to whom he stated that he found appellant to be as clean and honorable a man as he had ever met or had dealings with. In passing we note an affidavit of said Bradford placed in the record in which he denies that he would have stated as attributed to him in the bill of exceptions, if he had been allowed to testify. The bill of exceptions was filed April 10th and the affidavit is dated May 21st. We can not consider such affidavit. If the State does not concede that a witness whose answers are refused, would have answered as stated in the bill of exceptions, such bill of exceptions so stating should not be agreed to or approved. Referring to the subject matter of this bill of exceptions, we observe that the impeachment of a witness can not be based upon immaterial matters· No witness could testify that in his opinion appellant was a clean and honorable man, nor could a denial of having so stated be made the basis for impeachment. Authorities need not be cited.

Appellant placed his reputation for honesty and for being a law-abiding citizen, and also for truth and veracity, in issue; and supported same by testimony from many witnesses who lived in Winnsboro, Wood County, where he was reared and from which place he moved to Mt. Vernon in Franklin County about a year prior to this trial. Said witnesses confined their testimony to the reputation of appellant in Winnsboro and vicinity. Objection was made to the State introducing two witnesses who testified that in Mt. Vernon the general reputation of appellant at the time of trial, for truth and veracity, was bad. These witnesses admitted that they had heard nothing against appellant prior to the fire in question. It can not be disputed that one who takes the stand as a witness in his own behalf may be attacked by proof of his bad reputation for truth and veracity at any place, within a reasonable time theretofore; and he has no right to demand that the State be limited to such territory as he has seen fit to enter and from which he may have drawn witnesses to testify to his good repute in this particular. The general doctrine of the inadmissibility of testimony of bad reputation created post motem litem, seems restricted in the authorities cited by appellant to such reputation as to a trait of character involved in the crime charged, and to rest upon good reason, but as argued by the court in Fossett v. State, 41 Texas Crim. Rep., 401, when the question be the reputation of one as a witness, it is different. It might easily be true that one accused of crime be not tried for many months or even years after he has been accused, and that during this interval from discussion then first had it is found out that he is a notorious liar. We do not believe the rule could be broadly laid down that reputation for truth and veracity being found or concluded to be bad after the accusation is brought, ipso facto makes such testimony inadmissible.

In this case the bill of exceptions is not clear, and it is not even attempted to be shown, as was done in Renfro v. State, 42 Texas Crim. Rep., 393, that the discussion which brought about appellant's bad reputation arose only from and related to his connection with the crime charged. We have been unable to conclude that any error is shown. Graham v. State, 29 Texas Crim. App. 186; Hopperwood v. State, 39 Texas Crim. Rep., 15; Fossett v. State, 41 Texas Crim. Rep., 401; Renfro v. State, 42 Texas Crim. Rep., 393; Caruth v. State, 77 Texas Crim. Rep., 150, 173 S. W. Rep., 975.

Appellant sought to have the issue submitted to the jury as to whether John Bradford was an accomplice. and complains of the refusal by the court of a special charge, but we find nothing in the record raising such issue. Appellant totally denied any connection with or participation in any burning. Sharber in no way implicates Bradford, nor have we been able to find anything in the vigorous cross-examination of Bradford himself, or from the statement of any other witness, which could support such conclusion.

The charge of the trial court seems to have been fair and full, and we do not think same subject to any of the exceptions directed thereat, none of which we set out but all of which we have considered. Special charges submitting the theory that appellant would not be guilty unless the jury found that he committed the offense charged for the purpose of obtaining some benefit for insurance, submits no correct theory of law applicable to the offense charged.

There was no testimony calling for the submission of the issue of accomplice testimony as related to the witnesses who were watching the building alleged to have been burned, on the night of the fire in question.

There is in the record a bill of exceptions No. 21 prepared by the court and also a bill covering the same subject matter properly certified to and prepared as a by-standers bill. We have been unable to find any great difference in the substance of the two bills. It is made to appear that appellant's attorney in his argument to the jury had insisted that in return for his testifying, witness Sharber would not have to go to the penitentiary, and that in reply thereto State's counsel used language in substance as follows:

"Now don't you worry about Sharber. We will tend to him later. Of course, the poor devil will have to go to the penitentiary; he is not able to hire John Beaver, Loyd Davidson and John Beavers' partner to defend him and put up a long fight in the court-house for him."

The jury could hardly have failed to know that appellant was being defended by Messrs. Beavers & Mansell and Loyd Davidson and his firm. That Sharber was not able to employ such eminent counsel in his behalf, would not seem to be a fact capable of injury to the extent that its statement to the jury by State's counsel in his

argument would justify a reversal of this case. The court refused the special charge asked by appellant telling the jury not to consider such argument. We do not deem the action of the trial court to have been of any possible injury to appellant. He was given the lowest penalty for the offense.

We have substantially set out the material parts of the testimony in discussing the various questions raised above and believe same to be sufficient. The testimony of Ferman Sharber, if true and believed by the jury, fully made out the case charged against appellant in the indictment. If appellant a few days before the fire tried to get John Bradford to pad his books and burn the building for him and let it be done at a time when appellant was at Winnsboro, this would seem to sufficiently corroborate Sharber's story that he was employed to burn the building at a time when appellant was in Winnsboro.

Finding no reversible error in the record, an affirmance is ordered.

*Affirmed.*

ON · REHEARING.

February 21, 1923.

MORROW, PRESIDING JUDGE.—Upon re-examination of the record in the light of appellant's motion for rehearing and oral argument of counsel thereon, we believe that in Bills Nos. 6 and 7 there was more merit than we comprehended at the time of writing the original opinion.

In going into it in more detail, it appears that the witness John Bradford, on behalf of the State, testified that appellant, a few days before the fire, had made a proposition to him to "pad the books and burn the building;" that the witness had declined to participate and had ceased his connection with the appellant as an employee. On cross-examination, the appellant asked the witness if it was not a fact that on the day after the fire, he, in conversation with one Thomas, had stated that he had found the defendant "to be as honest, as honorable and as clean a man as he had ever had any dealings with." The court declined to received the answer to this question, either as original evidence or as a predicate for impeachment. The bill shows that an affirmative answer was expected. Subsequently the appellant called Thomas as a witness and offered to prove that the witness Bradford had, on the day after the fire, made to the witness the declarations mentioned. The trial court appends to his explanation of the bill, the exceptions and affidavits of Bradford, qualifying the statement. The affidavits cannot be considered. Appellant refers to decisions of this court supporting his motion.

In the case of Norris v. State, 52 Texas Crim. Rep., 166, 106 S. W. Rep. 136, it appears that the witnesses Butler and Lawrence were

introduced by the appellant to impeach the reputation of O'Neal for truth and veracity. To impeach or qualify the testimony of these witnesses against the veracity of O'Neal, the State offered in evidence a written petition which had previously been signed by the witnesses Butler and Lawrence seeking to have O'Neal appointed a deputy sheriff. Objection was urged by appellant upon the ground that it gave the opinion of the witnesses of the qualifications of O'Neal. The trial court admitted the evidence and this court approved its action and affirmed the case on the principle that the implication in the petition that O'Neal was of such honorable character as would make him worthy of an appointment to public office, was in such conflict with the testimony of the witnesses to his bad reputation for truth and veracity as rendered its admission in evidence proper.

In Sander's case, 54 Texas Crim. Rep., 101, 112 S. W. Rep., 68, the inquiry related to the death of Miss Baxter, of whose murder Sanders was charged. Her father, on cross-examination, was asked if he had not, when his daughter was found dead, entertained and expressed the opinion that she had committed suicide. The court excluded his affirmative reply, and this court, in reversing the case, said: "If it was a fact, as testified by Baxter, that there were various spots about her face and body indicating violence, he would have hardly been truthful in informing the neighbors, the sheriff, and officers, and physician, that he believed his daughter had committed suicide; at least, it was a matter of impeachment to show that his testimony on the final trial was at variance with his statements at the time of and just after finding the dead body."

Other rulings and expressions in the same case are in print. In Baker v. State, 79 Texas Crim. Rep., 510, 187 S. W. Rep. 950, the witness, Mrs. Laurie, wife of the deceased, having given testimony favorable to the appellant, the State was permitted to prove by her that she failed to attend the funeral of her husband. The court said: "This was admissible as affecting the credit to be given the testimony of Mrs. Laurie. It was unnatural conduct, if she cared anything for her husband; and while, perhaps, under the facts in evidence in this case, it would have but little weight, yet it was admissible, to be given such consideration as the jury deemed proper. It was also permissible to prove by W. C. Coleman that immediately after the killing Mrs. Laurie had said to him, 'The killing was uncalled for.'"

In the instant case, the declaration imputed to the witness Bradford that he "had found the appellant as honest, as honorable and as clean a man as he had ever had any dealings with" was at variance with the testimony that he had given in behalf of the State, to the effect that the appellant had sought the aid of the witness Bradford in committing the offense of arson.

The State relied to a very great degree upon the credibility of the witness Bradford to furnish the necessary corroboration of the accomplice witness. Bradford's testimony was in conflict with that of the appellant, and on further consideration, in view of the authorities mentioned, the opinion, is expressed that the appellant was entitled to cross-examine the witness Bradford with reference to his declaration to the witness Thomas for the purpose of affecting his credibility, and for the purpose of laying a predicate to impeach him if he denied the statement; that he was also entitled to the use of the testimony of the witness Thomas for the purpose of impeaching the witness Bradford in the event of his denial of his declaration to Thomas. The importance of the credibility of the witness Bradford was such that the error of the court in ruling against the introduction of the impeaching testimony requires a reversal of the judgment.

The motion for rehearing is granted, the affirmance set aside and the judgment reversed and the cause remanded.

*Reversed and remanded.*