Peter Bayer v. The State.

No. 7770.   Decided November 21, 1923.

Rehearing denied January 9, 1924.

1.—Murder—Charge of Court—Requested Charge—Manslaughter.

Where, upon trial of murder and conviction of manslaughter, the defendant was convicted of the latter offense the objection of defendant to the Court's charge that it should only have submitted manslaughter passes out of the case.

2.—Same—Requested Charge.

Where defendant requested a special charge embracing the same matter covered in the main charge there was no error in refusing same.

3.—Same—Charge of Court—Self-Defense—Burden of Proof.

Where the subject contained in the requested charge was fairly presented in the main charge, and the main charge did not shift the burden of proof, the defendant's objections to the main charge are not sustained.

4.—Same—Charge of Court—Burden of Proof—Words and Phrases.

Upon trial of murder and a conviction of manslaughter, the Court in submitting article 1143 C. C. P., covered every phase of the evidence raising the issue of defense against the execution of threats did not constitute reversible error, although other words were used than those embraced in the statutes; and although it is better practice to follow the language of the statutes.

5.—Same—Charge of Court—Self-Defense—Threats.

It has been held by this Court that when the evidence raises the issue of self-defense from apparent danger, and also because of previous threats, that both phases of the law should be submitted, and the contention that self-defense and the law as to threats should have been submitted together is without merit.

6.—Same—Suspended Sentence—General Reputation.

When the application for suspended sentence is filed, defendant by that act puts in issue his character, and inquiry on the part of the State could not be limited to his reputation prior to the time of the commission of the

offense, and there was no error in permitting the State on cross-examination of the witnesses if they knew the general reputation of defendant at the time of the trial. Qualifying Carruth v. State, 77 Texas, Crim. Rep., 150. Following Williams v. State, 83 Texas Crim. Rep., 26.

**7.—Same—Rule Stated—Reputation.**

If one accused of crime puts his character in issue in the absence of an application for suspended sentence, then the rule invoked by defendant would apply, and the inquiry should be restricted to a time prior to the commission of the offense.

**8.—Same—General Reputation—Cross-Examination.**

Where several witnesses testify that appellant's general reputation as a peaceable citizen was good, there was no error in permitting the State upon cross-examination if they knew what appellant's reputation was in that part of the city where he lived, and if it was a fact that he did not associate with white people in town; besides the witnesses answering in the negative there is no reversible error.

**9.—Same—Evidence—Conduct of Jury.**

While the case was upon trial the sheriff was taking the jury across the street, and seeing appellant's wife remarked to one of the jurors near him, "That is Peter Bayer's wife;" and no comment was made in any manner and the matter was never referred to again by the juror there was no reversible error.

**10.—Jury and Jury Law—Practice in Trial Court.**

After the case had been submitted to the jury one of them remarked that the case was one the Ku Klux Klan should have handled; but it appeared that all the jurors did not hear this statement etc. and no further reference was made thereto there is no reversible error.

**11.—Same—Separation of Jury—Statutes Construed.**

While it was asserted in the motion for a new trial that art. 745 C. C. P. inhibiting the separation of the jury in a felony case was violated and that by reason thereof defendant was entitled to a new trial, but it appeared from the record that if there was such separation the State discharged the burden placed upon it and showed that no injury resulted there is no error.

**12.—Same—Rehearing—Suspended Sentence.**

This court repeats that when an application for suspended sentence is filed, the question thereby raised as to the reputation of the accused for being a law abiding citizen relates to the reputation at the time of trial and not to the time before trial. Following Smith v. State, 252 S. W. Rep., 562.

**13.—Same—Questions Propounded.**

We do not think the questions complained of could by their being asked inject such harmful matter into the record as to raise a presumption of injury to the accused.

Appeal from the District Court of Falls County. Tried below before the Honorable Prentice Oltorf.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

*Frank Oltorf* and *Ben H. Rice, Jr.,* for appellant. Cited cases in the opinion.

*R. G. Storey,* Assistant Attorney General, for the State.—On question of self-defense: Swan v. State, 242 S. W. S., 735; Bordeaux v. State, 58 Tex. Crim. Rep., 61; Johnson v. State, 63 Texas Crim. Rep., 50; Mason v. State, 72 Texas Crim. Rep., 501; St. Clair v. State, 49 id., 483.

HAWKINS, JUDGE.—Appellant was indicted for murder growing out of the killing of Sadie Peoples. Conviction for manslaughter resulted with an assessed punishment of two years in the penitentiary.

Deceased was killed by being shot with a pistol, the first of two shots inflicting only a slight flesh wound in the shoulder, the other causing death. Appellant is a white man, having come to this country from Silesia. Deceased was a negro woman. The first shot was fired at the entrance of the Vilna Fish Market in the city of Marlin, the second being fired while appellant was in the dining room of the Vilna Restaurant and deceased in the kitchen. The shooting took place about nine-thirty o'clock in the morning. The evidence shows that for some considerable time appellant had been criminally intimate with deceased. The theory of the State supported by evidence was that the killing resulted from jealousy on appellant's part because deceased was trying to get him to cease his attentions to her and was bestowing her favors upon other parties. The defensive issues were raised by appellant's own evidence. He testified substantially that deceased had persuaded him to entrust her with the custody of two thousand dollars in cash with the argument that appellant was known to keep money on his person and was likely to be killed and robbed; that thereafter appellant demanded the return of the money and was seeking to secure it at the time of the killing. His evidence raised the issue of self-defense from apparent danger, as well as against the execution of previous threats, and also raised the issue of manslaughter. We omit any extended recital of the facts, but content ourselves by stating the issues raised thereby.

Bills of exception from one to fourteen inclusive present numerous complaints at paragraph 18, 19, 20 and 21 of the charge, and at the refusal to give special charges. Some of the complaints appear to have no basis whatever, and if ground for them existed at the time the objections were filed, they must have been eliminated by amending the charge. Complaint is made that the court committed error in paragraph 21 of his charge in leaving the jury to determine under the circumstances stated whether appellant was guilty of murder or manslaughter, it being insisted that the jury should have been told that under such circumstances he would only be guilty of manslaughter. If the verdict had been for murder then this contention

might properly demand our consideration, but the conviction being for manslaughter only we think a discussion of it unnecessary, because whether strictly correct or not it could have resulted in no harm to accused. The cases cited by appellant will be found upon examination to be those where conviction was for murder.

Appellant requested a special charge embracing the same matters covered in paragraph 20 of the instructions. We think the refusal of the special charge presents no error. The subject seems to have been fairly presented in the main charge. Neither do we think the criticism justified that paragraph 20 places the burden of proof on appellant or unduly limits his right of self-defense, or that same can be regarded as a negative presentation of the matter; when considered in connection with paragraphs 18 and 19 immediately preceding it is not subject to such construction. Appellant's right to follow deceased and shoot her the second time necessarily depended upon whether he was acting in self-defense when he fired the first shot. As supporting the criticism for embracing this proposition in paragraph 20 of the charge we are cited to McMahon v. State, 81 S. W. Rep., 296; St. Clair v. State, 49 Texas Crim. Rep., 479, 92 S. W. Rep., 1095; Coker v. State, 128 S. W. Rep., 137; Sargent v. State, 33 S. W. Rep., 364; Jones v. State, 71 S. W. Rep., 962; Duke v. State, 61 Texas Crim. Rep., 19, 133 S. W. Rep., 433; Foster v. State, 67 Texas Crim Rep., 5, 148 S. W. Rep., 583. As we read the opinions they do not sustain the complaint. On the contrary the St. Clair and Foster cases (supra) are direct authority upholding the correctness of the charge as given.

The nineteenth paragraph of the charge is assailed as casting a more onerous burden on accused than required by the law as limiting to particular acts of deceased the right to defend on the ground of threats. The contention is made that as Article 1143 C. C. P. justifies one in killing an adversary who has previously made threats against his life, and who at the time of the killing "by some act then done manifests an intention to execute the threat so made," the court was in error in directing the jury that appellant would be justified in acting upon some "demonstration" or "movement" or some "statement" on the part of deceased from which it appeared to appellant from his standpoint at the time that deceased was about to execute the threat. We think it always better in charging upon this subject to follow the language of the statute. However, there does not exist in the charge complained of the vices pointed out in Miles v. State, 18 Texas Crim. App., 156; Bonner v. State, 15 S. W. Rep., 821; Swain v. State, 48 Texas Crim. Rep., 98, 86 S. W. Rep., 338; Graves v. State, 58 Texas Crim. Rep., 42, 124 S. W. Rep., 676; Clark v. State, 51 Texas Crim. Rep., 519, 102 S. W. Rep., 1138; Burnham v. State, 61 Texas Crim. Rep., 51. The charge in the present case does not restrict appellant's right to act upon some particular demonstration, movement or

statement, but justifies him in acting upon any kind of demonstration, movement or statement from which it appeared to appellant, viewed from his standpoint at the time, that deceased was about to execute the threat. The language chosen by the learned trial judge appears broad enough to embrace any act verbal or otherwise on deceased's part. It covered every phase of the evidence raising the issue of defense against the execution of threats, and we think a reversal would not be demanded because other words were used than those embraced in the statute. We have been unable to discover how any injury could have resulted to accused, or that any restriction or limitation of his rights resulted from the charge as given.

The complaint that the charges on the law of self-defense and the law as to threats should have been submitted together is without merit. As we understand the criticism it is that the two subjects should have been embraced in one paragraph. The authorities cited in support of the proposition do not so hold. They are authority for the proposition that when the evidence raises the issue of self-defense from apparent danger, and also because of previous threats, that both phases of the law should be submitted. This was done in the present intance.

Appellant filed an application asking that in the event he was convicted of manslaughter he should be granted a suspended sentence. He placed witnesses upon the stand and proved by them his general reputation as a peaceable law-abiding citizen prior to the date of the killing. Upon cross-examination these witnesses were asked by the State if they knew the general reputation of appellant at the time of trial. Over objection they answered that it was bad. When the application for suspended sentence was filed appellant by that act put in issue his character, and inquiry on the part of the State could not be limited to his reputation prior to the time of the commission of the offense. As it related to his application for suspended sentence his character at the time of trial was under investigation. An expression contrary to this proposition may be found in Carruth's case, 77 Texas Crim. Rep., 150, 177 S. W. Rep., 973, but this does not seem to have been followed. The opinion in that case was rendered in 1915. In 1918 in Williams v. State, 83 Texas Crim. Rep., 26, 201 S. W. Rep., 188, the same court announced positively that where suspended sentence was sought the character of accused at the time of trial was the point at issue. This holding was followed in Mason v. State, 90 Texas Crim. Rep., 560, 236 S. W. Rep., 93. The question is analogous to the investigation of the reputation of a witness for truth and veracity. The matter there pertinent is what is his reputation now, at the time he testifies, because it is now the jury must determine what weight to give his testimony. This point was discussed at some length in Cassell v. State, 94 Texas Crim. Rep., 23, 249 S. W. Rep., 1097. So in the matter of suspended sentence, the jury must determine whether

at the time of trial accused's character warrants such recommendation. If one accused of crime puts his character in issue in the absence of an application for suspended sentence, then the rule invoked by appellant would apply, and the inquiry should be restricted to a time prior to the commission of the offense for which he is on trial. Several witnesses testified that appellant's general reputation as a peaceable, law-abiding citizen was good. It was the contention of the State that these witnesses based their evidence upon business dealings with appellant and that he did not associate with witnesses or with people with whom they associated. They were asked upon cross-examination by the State if they knew what appellant's reputation was in that part of the city where he lived and further if it was a fact that appellant did not associate with white people in the town. Objection was sustained to some of these questions and to others the witnesses answered that they did not know what the reputation of appellant was in that part of the city where he resided. We have been unable to discover any error committed by the court in his ruling upon the matter complained of, nor that the questions to which objection was sustained were so obviously harmful as demands a reversal. Where a witness is tendered to support the good reputation of an accused or a witness the opposing party has a right upon cross-examination to extend their investigation to the sources of information of the supporting witness. If it could be shown that the witness knew the reputation of the party inquired about was bad among the people in the immediate community where he resided it would be pertinent for the jury to know this, as weighing the testimony of the supporting witness. However, the witnesses having said they did not know the reputation of appellant in the particular locality of his residence the matter resolves itself into whether the question itself was erroneous and harmful. We have not been able to persuade ourselves that such is the case.

While the case was upon trial the sheriff was taking the jury across the street, and seeing appellant's wife, remarked to one of the jurors walking near him, "that is Peter Bayer's wife." No comment was made about it in any manner and the matter seems never to have been referred to by the juror. Appellant's wife was not a witness. He admitted from the witness stand that he was married but was not living with his wife. After the case had been submitted to the jury one of them remarked that the case was one the Ku Klux Klan should have handled and if they had the jury would not have been bothered with it. Some of the jurors did not hear the statement, and when the remark was made another juror said that had nothing to do with the case. No further reference seems to have been made to it. We are of the opinion that the verdict reflects no injury to appellant by the two incidents mentioned.

It is asserted in the motion for new trial that Article 745 C. C. P. inhibiting the separation of the jury in a felony case was violated and that by reason thereof appellant was entitled to a new trial. All of the jurors (except one who was out of the county) testified upon the hearing of the motion for new trial as well as did the officer in charge of the jury. The facts show that sleeping accommodations for the jury were provided by furnishing cots which were scattered about the district court room. The deputy sheriff had his cot upon the platform where the judge's stand was located. On account of the mosquitoes being troublesome the jurors attempted to place their cots near the windows and doors in order that the air passing through would relieve them of this annoyance. On two of the nights during the progress of the trial the juror Koon placed his cot in or near the west door of the courtroom leading into the hall. From this hall the stairway led to the lower floor of the courthouse, the outside doors to which were unlocked. There is some conflict in the testimony as to just the position of the cot. Some of the jurors say the head of the cot was in the door and others say it was not more than three or four feet from the door in the hall. Those whose cots were situated near the doorway testified that they talked to the juror Koon while he occupied his cot after they had retired for the night. The testimony of the deputy sheriff was to the effect that from his position on the platform he could see the head of the juror Koon while he was lying down, but if he was sitting up on the side of the cot he would be out of his sight. All the jurors as well as the officer testified that at no time during the night did they hear any conversation between the juror Koon and any other party save with other jurors, and heard no one moving in the hall except the courthouse janitor who would be there early in the morning. The juror Koon himself testified that he never left his cot or communicated with any person other than the jurors; that from his position at or near the door he could see some of the other jurors on their cots scattered about the courtroom. The janitor testified that on two mornings when he went up to clean up the courtroom he found the juror Koon on his cot in the hall. He placed the head of the cot not more than four feet away from the door at these times. After hearing all the evidence introduced upon the motion for new trial the court finds and certifies as a fact that "there was no communication of any kind by the juror Koon with any person other than the other jurors."

We do not think the facts show such a separation of the jury as was contemplated by the statute. See Watson v. State, 82 Tex. Cr. Rep., 305, 199 S. W. Rep., 1113, and the authorities therein cited; also Wood v. State, 84 Tex. Cr. Rep., 187, 206 S. W. Rep., 349. If there had been a separation the State, we think, has discharged the burden thus placed upon it and shown that no injury resulted by

the conduct complained of. The learned trial judge so found after hearing much evidence produced upon hearing the motion, and we do not feel justified in disturbing his finding.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

### January 9, 1924.

LATTIMORE, JUDGE.—Appellant strenuously insists that we erred in not upholding the contentions evidenced by his assignments of error from eight to twelve, and we have again reviewed the matters referred to which are in bills of exception Nos. 15 to 20 inclusive. We again repeat that when an application for suspended sentence is filed, the question thereby raised as to the reputation of the accused for being a law-abiding citizen relates to his reputation at the time of trial. Smith v. State, 94 Tex. Crim Rep., 633, 252 S. W. Rep., 562. It follows that the contention of appellant that error was committed in allowing the State to cross-examine his character witnesses and by them show that his reputation at the time of trial was bad, is not sound. This relates to bills of exception Nos. 15 and 16. The remaining matters consist of complaints against the asking of questions. We are not led to believe upon mature consideration that there was any reversible error shown in this matter. We do not think the questions complained of could by their being asked inject such harmful matter into the record as to raise a presumption of injury to the accused.

The motion for rehearing will be overruled.

*Overruled.*