## JOHN C. CLARK V. STATE.

No. 26,167. January 21, 1953.

*Leonard Brown*, San Antonio, for appellant.

*Austin F. Anderson*, Criminal District Attorney, *Richard J. Woods*, Assistant Criminal District Attorney, San Antonio, and *George P. Blackburn*, State's Attorney, Austin, for the state.

WOODLEY, Judge.

Appellant was convicted for the murder of Augustus Moreland, and the jury assessed his punishment at 10 years in the penitentiary.

The deceased was "the boy friend" of Obera Clark, the divorced wife of appellant. The killing occurred on October 6, 1951, at the Woodlake Country Club where the deceased had met Obera by previous appointment.

Appellant came to the table where Obera was seated with one Mitchell and his wife, and after dancing with Mrs. Mitchell, and buying the two women a bottle of beer, returned to the table and insisted that his former wife dance with him. He caught

her by the arm and the deceased caught her by the other arm and both were "pulling" on her. Appellant asked deceased if he was "pulling on her" to which the deceased replied "So what?" Appellant left, saying "Wait until I get back."

Soon thereafter appellant shot and killed Moreland.

According to the state's theory Moreland was killed as he was leaving the club, without justification, jealousy being the motive.

Appellant claimed self-defense and offered testimony to the effect that the deceased had made threats against him on previous occasions, some of which had been communicated to him. Witnesses testified that the deceased was advancing toward appellant when the shots were fired.

It was appellant's testimony that he fired in self-defense, believing at the time that the deceased, who was running toward appellant with his hand under his coat, was about to carry out his threats to kill him.

Obera Clark was the first witness called by the state. She testified that she was divorced from appellant in April of 1949, after living with him for some 13 years. A son of this marriage lived with the witness, and appellant visited them from time to time.

The witness testified that at the time of the divorce she and her family lived in the home of the parents of the deceased, Augustus Moreland; that she and her son continued to live there and she thereafter began "going steady" with the deceased.

On cross-examination of Obera she was asked whether appellant returned home one night and, finding that she had gone out with the deceased, went after and found her with deceased, to which she replied in the affirmative. She testified further that appellant agreed to let her have a divorce, which she wanted to get for non-support.

Appellant's version of this affair which immediately preceded the separation was offered in his direct testimony. It was to the effect that on the occasion in question he got off from his work an hour early, came home and found his boy in bed and alone; that he went to the Down Beat Chicken Shack and

found his wife and the deceased Moreland at a table drinking beer; that he argued with his wife, took her home and they had a family argument; that later the deceased and his parents were there and deceased picked up a chair. Appellant testified that he left the house when Moreland, Sr. came between him and the deceased, and did not contest the divorce.

On cross-examination appellant was asked if, as a matter of fact, he was not working that day but had been in jail, and he answered in the negative. Appellant also denied, when questioned on cross-examination, that his wife had told him to come home, and got mad when he said he was not ready, or that she told him she wanted to eat and had been waiting all day for him. He also denied that his wife had gone to Mr. Brown (appellant's attorney in this cause) and got Mr. Brown to get him out of jail.

Appellant complains of the overruling of his objection to the following question propounded to him on such cross-examination.

"Q. As a matter of fact when Moreland came in to you on this day you and your wife went home about nine o'clock and at that time you were beating your wife up and you were causing a disturbance and all of the Morelands came in and asked you to stop?"

Appellant having gone into the matter of his "family argument" the trial court did not err in overruling this objection.

Objection to the question of whether appellant beat his wife at the cafe was properly overruled for a like reason.

We are unable to agree that the affair between appellant and his wife, with which the deceased was associated, was an immaterial matter upon which appellant's testimony could not be impeached.

After the foregoing testimony had been introduced and other witnesses had testified both for the state and for the defense, Obera Clark was recalled by the defendant and was examined concerning whether or not she had told the assistant district attorney that appellant had been put in jail and that she had employed Mr. Brown to get him out of jail. She fixed the time of this incident as long before the divorce suit was filed. She said that she had so informed the assistant district attorney and it

was true; that she had gone to Mr. Brown and informed him him that she understood appellant was in jail, but upon telephoning, Mr. Brown found out he had been released; that she had informed the assistant district attorney that such were the facts.

Being examined on re-direct the witness Obera Clark was confronted with a statement which she had sworn to and was examined in regard thereto, though the statement was not offered in evidence.

Complaint is made to the overruling of appellant's objection to the following question propounded to Obera Clark during this examination:

"Isn't this the conversation you actually related in your sworn statement made to me asking about this proposition about your husband being in jail; Isn't this the truth: 'On or about January 9, 1949, J. C. Clark and two brothers came to visit us from Lockhart, Texas. J. C. took the girl out that night and about 4:00 a.m. the next morning a deputy sheriff brought the girl home and she related a long story about J. C. beating her up and tried to rape her?' Didn't you tell me that?"

Appellant moved for a mistrial and his objection and motion were overruled and he excepted.

The question propounded to the witness was improper and prejudicial wherein inquiry was made as to whether Obera Clark had stated to the assistant district attorney that a girl had "related a long story about J. C. beating her up and tried to rape her." That the question was unanswered is not controlling. The asking of the question injected into the case a suggestion that some girl had accused appellant of an offense against her. Nor does the testimony show that the hearsay evidence as to this extraneous offense was admissible because appellant had gone into the matter.

Appellant's testimony was that he had been working and came home early to find that his wife had gone to a cafe where the "argument" above mentioned occurred. Whether or not this was the same occasion on which the state contends appellant was in jail is not clear. If it was, then the state should have been content to show that he was in jail and not at work.

It was not competent to show that appellant had been accused

of assault, or assault to rape or attempt to rape, in order to make an issue as to whether he had been working, as he testified, or was in jail.

It is not shown that complaint was filed against appellant for his conduct with this girl, or that indictment was returned. If such had occurred, under the present statute, testimony as to same would not have been admissible unless a conviction followed. See Art. 732a, Vernon's Ann. C.C.P.

Other bills of exception relate to the proof by the state of the general reputation of the deceased as being a law-abiding citizen.

We re-affirm our decisions in Martin v. State, 112 Tex. Cr. R. 524, 17 S.W. 2d 1069, and in Denson v. State, 107 Tex. Cr. R. 649, 298 S.W. 604, cited in the Martin case, which we believe distinguish or overrule prior decisions which hold or indicate that the testimony as to general reputation of the deceased in regard to being law-abiding was admissible under the provisions of Art. 1258 P.C. This statute reads as follows:

"Where a defendant accused of murder seeks to justify himself on the ground of threats against his own life, he may be permitted to introduce evidence of the threats made, but the same shall not be regarded as affording a justification for the killing unless it be shown that at the time of the homicide the person killed by some act then done manifested an intention to execute the threat so made. In every instance where proof of threats has been made, it shall be competent to introduce evidence of the general character of the deceased. *Such evidence shall extend only to an inquiry as to whether the deceased was a man of violent or dangerous character, or a man of kind and inoffensive disposition, or whether he was such a person as might reasonably be expected to execute a threat made.*" (As underscored in Denson case.)

Upon rehearing in Denson v. State, supra, Judge Morrow speaking for this court said:

"The statute has been uniformly construed so that when one accused of homicide interposes self-defense as a justification and introduces evidence to the effect that he had been informed that his life has been threatened by the deceased, the state may meet such defensive testimony by evidence touching the character of the deceased. On the trial of the present case, the situation

was such as opened the way for the state to invoke the operation of the statute mentioned. The privilege of the state, however, would extend no further than the limiting clause of the statute underscored above. * * *."

"Any language in the original opinion, or in the other opinions to which reference has been made, which might be construed to mean that in a case like the present the character of the deceased might be attacked upon the ground that he was not a 'law-abiding citizen' or supported upon such ground in particulars variant from the subject covered by the statute mentioned (Article 1258, P.C., 1925) is withdrawn.

In Martin v. State, supra, Judge Christian, after quoting from the Denson case, said:

"The evidence in the case at bar did not justify the introduction by the state of proof that deceased bore the reputation of being a law-abiding citizen. It was by virtue of threats on the part of deceased against appellant that the operation of the statute mentioned was invoked. In permitting the state to extend the inquiry further than the limiting clause of the statute the learned trial judge fell into error. The issue of guilt was closely contested. Proof that appellant had killed a law-abiding citizen was calculated to create sympathy for the deceased. Where the issue of guilt is closely contested, we would not feel authorized to hold that the erroneous admission of such evidence was not prejudicial. Not committing ourselves to the proposition that a reversal should follow in every case where evidence of the character mentioned was improperly admitted, we are of the opinion that under the facts presented here reversible error is shown."

Proof by a number of witnesses that the deceased was a law-abiding citizen was calculated to create sympathy for the deceased, while the suggestion that appellant had attempted to rape an unidentified girl was calculated to create in the minds of the jury a prejudice against him.

Appellant is entitled to a trial free from such collateral influences which must have weighed heavily against him when the jury came to pass upon his self-defense plea, his application for suspension of sentence and the punishment to be assessed.

The judgment is reversed and the cause is remanded.