**John Michael LAMB, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 69187.**

Court of Criminal Appeals of Texas, En Banc.

June 13, 1984.

Rehearing Denied Oct. 17, 1984.

12

Joe Weis, Greenville, for appellant.

F. Duncan Thomas, Dist. Atty. and Steven Watkins, Asst. Dist. Atty., Greenville, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

This is an appeal from a conviction for capital murder. The jury answered in the affirmative the special issues submitted at the punishment stage of the trial pursuant to Article 37.071, V.A.C.C.P., and the trial court assessed appellant's punishment at

death. Appellant raises five grounds of error. We find no merit in any of appellant's claims and therefore affirm.

In his first ground of error appellant alleges that the trial court erred in failing to grant his motion for new trial. Appellant in his motion for new trial claims that the State failed to disclose allegedly exculpatory material to him prior to trial. The motion for new trial was overruled by operation of law. This being the case there was no evidence to support appellant's claims. Motions for new trial are not self-proving. *Vaughn v. State*, 456 S.W.2d 141 (Tex.Cr.App.1970). They must be supported by affidavits and the affidavits must be offered into evidence. *Walker v. State*, 440 S.W.2d 653 (Tex.Cr.App.1969). Since appellant failed to properly present his motion, we find no error in the trial court's failure to grant it.

However, since appellant's motion implicates federal constitutional issues, we have reviewed the allegations in the motion and the supporting affidavit in the interest of justice. Appellant claims that the State knew that appellant had lied in his confession when he stated that he had, earlier in the evening, stolen the gun used to kill the deceased, from the deceased. Appellant claims that the State knew that appellant had actually stolen the alleged murder weapon in a prior burglary. Appellant further claims that the State relied upon that part of the confession in arguments before the jury.

Initially we note that appellant's own affidavit indicates that the State did in fact provide him with a copy of the offense report indicating that he had stolen a weapon in a burglary the day before the instant offense occurred. In his sworn affidavit in support of the motion for new trial, appellant's counsel states that the supporting documents were delivered to him "at some time either immediately before or immediately after jury selection began in this case." Jury selection in this case took two weeks to complete. Thus appellant had in his possession the alleged exculpatory ma-

terial for a full two weeks before any testimony was heard.

We also note that the State did not offer that part of appellant's confession pertaining to the murder weapon; *the appellant did.*[1] The appellant having offered the offending statement, he cannot now on appeal complain that the State relied upon such evidence. Finally, as the State points out in it's brief, the fact that appellant stole a weapon similar to the weapon used in the instant offense in a prior burglary does not necessarily preclude the conclusion that he also stole another weapon from the deceased. Since the murder weapon was never recovered, there is no way to verify whether appellant did in fact steal a weapon from the deceased. Ground of error number one is overruled.

In his second ground of error appellant challenges the voluntariness of his confession. The entire confession of the appellant is set out as follows:

"Friday November 5, 1982 I got out of Jail in Searcy Arkansas about 10:30 a.m. I started hitchhiking toward Texas. I caught a ride into a town about 45 miles from Dallas on Interstate Highway 30 between Arkansas and Dallas, Texas. I walked across the Parking Lot of a motel I believe it was a Ramada Inn. I saw this guy in front of a motel room I talked to him a little bit then he went to eat. I stayed around the motel area for awhile. When this guy came back to his room after he had eaten and invited me in the room. We talked for about thirty minutes he was sitting on the bed and I was sitting on a chair nearby. This guy put his hand on my leg and I said take your hand off I don't go for that shit. I got up at this time and he said for me to leave. I had earlier gotten a gun from a bag in the room while this guy was in the bathroom. When I got up I took a step or two toward the door pulled the gun from my pocket and shot the guy three times I shot three times because the gun

was an automatic after I shot the guy was on his knees on the bed and I heard him fall to the floor. I got the guys billfold off the nightstand and took a shaving kit. I got the keys to the guys car and drove his car toward Dallas. The car was a tan Nova with Virginia License Plates. The Drivers license and credit card in the billfold had the name of Jerry Chafin. The gun that I shot the guy with was a small automatic Pistol. I threw the gun out of the car somewhere between this town and Dallas. I slept a couple hours in the car in Dallas then drove to Houston. I drove to a Holiday Inn in Houston and checked into the Motel Saturday November 6, 1982. I used Jerry Chafin credit card and Drivers License to check into the Holiday Inn. I threw a Television and some other stuff that was in the car into a Garbage bin at the Holiday Inn. I stayed in Houston until Monday then started East toward Louisiana. Tuesday I stopped at a Shamrock station in Lafayette Louisiana. I got some gas and two cases of Budweiser Beer Longnecks. I attempted to use Jerry Chafin credit card and a girl called in to check on the credit card. I took off without the card. I drove East on Interstate 10. Thursday Morning I stopped at store and gas pumps in Greenville Florida. I shot the attendant and took two cases of Budweiser Beer and some money. A few minutes later I was stopped by the Police and arrested. When I was arrested I was driving the car that I got in Texas and had the billfold in my pocket with Jerry Chafin Drivers License of Jerry Chafin."

He claims that the trial court erred in admitting his confession after its involuntary character was established. The trial judge held a *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), hearing outside the presence of the jury and filed findings of fact and conclusions of law.

---

**1.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

Appellant was arrested in Florida. The arresting officer in Florida testified as well as the investigating officers from Texas. The appellant also testified. Appellant claimed that implied promises of leniency were made by the officers. The officers denied any such promises.

The judge at the *Jackson v. Denno*, supra, hearing is the sole judge of the weight and credibility of the witnesses. He may believe or disbelieve all or any part of any witness' testimony. *Hawkins v. State*, 660 S.W.2d 65 at 72 (Tex.Cr.App. 1983). The trial judge specifically found that no implied promises were made to appellant. The officers specifically denied making any such promises. The trial judge chose to believe the police officers. We have reviewed the testimony of the officers and the appellant and we find that the trial judge had ample testimony upon which to base his factual findings. Ground of error number two is without merit and is overruled.

Appellant next challenges the sufficiency of the indictment. Appellant claims that the trial court erred in failing to grant his pretrial motion to quash. The motion to quash challenged the indictment as being duplicitous and vague. Appellant also alleged that V.T.C.A. Penal Code, Secs. 19.-02(a)(3) and 19.03(a)(3) are unconstitutional insofar as both statutes prohibit the same conduct but provide distinctly different punishments. This ground of error is multifarious and presents nothing for review. However, in the interest of justice, we will nonetheless examine appellant's claims.

In the first part of ground of error number three, appellant contends that the indictment alleged murder, felony murder and capital murder in one paragraph and was therefore duplicitous. The indictment in pertinent part reads:

"[D]id then and there intentionally cause the death of an individual, Jerry Harrison Chafin, by shooting him with a gun, and the said John Michael Lamb did then and there intentionally cause the death of the said Jerry Harrison Chafin in the course of committing and attempting to commit the robbery of Jerry Harrison Chafin;"

Initially we would note that appellant was charged with intentionally killing an individual and therefore V.T.C.A. Penal Code Sec. 19.02(a)(3), felony murder, is not charged. We have reviewed indictments very similar if not exactly like this indictment and have found them to be sufficient. *Livingston v. State*, 542 S.W.2d 655 (Tex. Cr.App.1976). We find the indictment here to be indistinguishable from the indictment we upheld in *Jurek v. State*, 522 S.W.2d 934 (Tex.Cr.App.1975).

Appellant further alleges that the capital murder statute pertaining to murder during the commission of a felony, V.T.C.A. Penal Code Sec. 19.03(a)(2), and the felony murder statute, Sec. 19.02(a)(3), supra, are unconstitutional in that both statutes penalize the same conduct but provide for different penalties. This argument is without merit, for it ignores the very element which distinguishes the two crimes. Capital murder prohibits the *intentional* taking of a life during the commission of a felony. The felony murder statute dispenses with any inquiry into the mens rea accompanying the homicide itself. The underlying felony provides the necessary culpable mental state. See *Garrett v. State*, 573 S.W.2d 543 (Tex.Cr.App.1978); *Rodriquez v. State*, 548 S.W.2d 26 (Tex.Cr. App.1977).

Further, appellant urges that the indictment failed to give him notice as to the commission of the robbery element. Appellant argues that since this Court has defined "in the course of committing or attempting to commit" to mean conduct occurring in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of robbery, that he is entitled to a specific pleading as to whether the alleged conduct resulting in Jerry Harrison Chafin's death occurred in an attempt to commit, during the commission of, or in immediate flight after the commission of the alleged robbery. The indictment in this case tracked the statuto-

ry language and is sufficient. The matters appellant sought by his motion to quash are evidentiary in nature and do not have to be pled. Ground of error number three is overruled.

In his fourth ground of error appellant challenges the trial court's charge on voluntary manslaughter. Appellant claims that the court erred in refusing to charge the jury that they must find beyond a reasonable doubt that the defendant in causing the death of the alleged victim, if he did, was not acting under the immediate influence of sudden passion arising from an adequate cause in that portion of the Court's charge which applies the law of capital murder to the facts.

■ A charge on voluntary manslaughter is required only when there is evidence that the appellant acted under the immediate influence of sudden passion arising from an adequate cause. *Luck v. State*, 588 S.W.2d 371 (Tex.Cr.App.1979). Failure to give such a charge is not reversible error in the absence of said testimony. Luck, supra.

■ Appellant's confession implies that the deceased made a gesture which could perhaps be interpreted as a homosexual advance on appellant. However the confession does not state that appellant was in any way enraged or angered by this advance. Rather the confession indicates that appellant in no uncertain terms made clear that he did not wish to engage in any sexual activity with the decedent and shortly thereafter the decedent asked the appellant to leave. Appellant then shot the decedent four times. Sudden passion is not raised by this confession. Since appellant was not entitled to a charge on voluntary manslaughter, the court actually placed appellant in a better position than he was entitled to.[2] There is no error.

In his final ground of error appellant alleges that the trial court committed reversible error in admitting the deceased's

job resume' and some travel receipts into evidence. The exhibits objected to by appellant were offered by the State after the appellant, in his case-in-chief, offered a document that made reference to a gay rights organization. This document was found in the deceased's travel bag. The resume' and the travel receipts were found in the same bag. Appellant contends that the true intent. of the State in offering said exhibits was to improperly inform the jury of the "apparent good character, reputation and high education achievements" of the deceased.

Throughout the trial, appellant sought to portray the victim as a homosexual and imply that the appellant's actions were the result of an offensive, homosexual advance by the victim. The document introduced by appellant made reference to the Philadelphia Lesbian and Gay Task Force.

As authority, appellant relies on *Clark v. State*, 158 Tex.Cr.R. 180, 254 S.W.2d 106 (1953). In *Clark*, supra, the prosecution introduced testimony as to the *general reputation* of the deceased in regard to being peaceful and law-abiding, and this Court reversed the conviction. This Court did not, however, in Clark, supra, disavow the notion that evidence of whether a deceased in a murder case was a person of violent or dangerous character, or a person of kind and inoffensive disposition, would be admissible where warranted. See *Johnson v. State*, 167 Tex.Cr.R. 289, 319 S.W.2d 720 (1958); see also *Hatley v. State*, 533 S.W.2d 27 (Tex.Cr.App.1976).

Additionally, we find that the precursors to V.T.C.A. Penal Code Sec. 19.06 were the same statutes discussed in Clark, supra, i.e., Vernon's Ann.P.C. arts. 1257a and 1258. Finding that Sec. 19.06, supra, in murder or involuntary manslaughter prosecutions, allows either side to introduce evidence as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the ac-

---

2. We note that the trial judge not only gave a charge on voluntary manslaughter, but, in so doing, charged the jury in accordance with the charge in McClung, Jury Charges for Texas Criminal Practice (Jan., 1981), as cited with approval by this Court in *Cobarrubio v. State*, 675 S.W.2d 749 (Tex.Cr.App.1983) (pending on rehearing.)

cused and the deceased, the query then presented is whether Sec. 19.06 applies to *capital* murder prosecutions. The Practice Commentary to Sec. 19.06 by Searcy and Patterson hypothesizes thusly:

"The only other question about Section 19.06 is its application to the capital murder offense defined by Section 19.03. It does not mention capital murder, but since that offense is merely murder plus aggravating factors, and Section 19.06 does mention murder, capital murder surely is covered."

We find the rationale in the Practice Commentary to be persuasive and we hold that Sec. 19.06, supra applies to capital murder prosecutions under Sec. 19.-03, supra. We further find that the resume' and travel receipts were properly introduced both as rebuttal to the defensive evidence and as a circumstance under Sec. 19.06, tending to show that there was no previously existing relationship between appellant and the victim.

Having found no error, the judgment is affirmed.

TEAGUE, J., concurs in this opinion.

CLINTON, J. dissents.

ONION, Presiding Judge, concurring in part and dissenting in part.

I concur in the result reached. I dissent vigorously to the action of this court in disposing of ground of error number one by considering affidavits, etc., which were not properly before the trial court. It makes no difference whether the issue is a federal constitutional issue or a state constitutional issue or whatever. If the court had found merit in the contention by reviewing the affidavits, would this court have been justified in reversing without there having been a hearing on the motion for new trial and without the State being heard? This departure from established procedure is wrong. The fact that the case carries the death penalty should not authorize the departure. Will we hear again about what this court does today?