IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1533-08





 

JEFFREY ROUSE, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRD COURT OF APPEALS


TRAVIS COUNTY





 Hervey, J., delivered the opinion of the Court in which Keller, P.J., Meyers, 
Price, Womack, Johnson, Keasler and Cochran, JJ., joined. Holcomb, J., dissented. 

 

O P I N I O N 


 In this case, the court of appeals decided that appellant's "open" guilty plea to a second-degree-felony robbery offense was involuntary because of inaccurate advice of counsel (1) and also
because the trial court impermissibly engaged in plea bargaining. (2) We will reverse.

 On February 6, 2002, an indictment was filed charging appellant with a second-degree-felony
robbery offense with a punishment range of two to twenty years and a possible fine not to exceed
$10,000. (3) The indictment also contained two enhancement paragraphs (paragraphs two and three)
alleging three prior felony convictions that enhanced the punishment range to 25 to 99 years, or life. 
See Tex. Pen. Code, § 12.42(d) (providing for punishment range of 25 to 99 years or life for most,
including second-degree, felonies if it is shown "that the defendant has previously been finally
convicted of two felony offenses, and the second previous felony conviction is for an offense that
occurred subsequent to the first previous conviction having become final"). (4)

 On May 1, 2002, appellant appeared in court with his retained counsel and made an "open"
plea of guilty to the second-degree-felony robbery offense. The trial court admonished appellant
concerning the consequences of his plea including an admonishment that appellant was subject to
the enhanced punishment range under Section 12.42(d). Appellant stated, among other things, that
he understood that he was subject to this enhanced punishment range.

 [TRIAL COURT]: And you understand in addition to the second-degree felony that's
been alleged against you, Mr. Rouse, in this cause that the State has also filed
enhancement counts which would habitualize you where it would make it punishable
by life in the penitentiary or by a term of years anywhere from 25 years to 99 years
in the penitentiary or life in the penitentiary? Do you understand that?


 [APPELLANT]: Yes, sir.

* * *

 [TRIAL COURT]: And so do you understand, Mr. Rouse-first of all, earlier on this
morning I asked you how you wished to plead to the charge of robbery, and you
entered a guilty plea, but you understand the State is not waiving enhancement counts
and they still wish to go forward with the enhancement counts which would make
you a habitual offender. Do you understand that?


 [APPELLANT]: Yes, sir.


 [TRIAL COURT]: So even though you pled guilty to the charge of robbery, which
you had a right to do if you wanted to, you understand the punishment range is that
second punishment range that I had described to you, which would be 25 years to 99
years in the penitentiary or life in the penitentiary in that situation. Do you
understand that?


 [APPELLANT]: Yes, sir.


 [TRIAL COURT]: Okay. And knowing that, sir, knowing they are still proceeding
with this as a habitual offender, as opposed to just a robbery, do you still wish to
maintain your plea of guilty right now?


 [APPELLANT]: Yes, sir.


 The trial court accepted appellant's guilty plea and found him guilty of the second-degree-felony robbery offense as alleged in the indictment. The trial court and the parties then proceeded
to address the issue of punishment. The State indicated that there was no plea-bargain agreement,
but that it was offering appellant its recommendation of a 17-year sentence "even though it was
habitual." The State also indicated that it would consider a counter-offer from appellant. Appellant
personally addressed the trial court and explained that he had a drug problem and that he did not
know "how this escalated into a robbery" when he meant to commit only a shoplifting. (5) Appellant's
lawyer asked the trial court for probation and drug treatment at a drug-treatment center. The State
responded that the last time that appellant "went down he got 15 years" and that it would "hate . .
. to move backwards when someone commits subsequent criminal offenses." The trial court
indicated that it needed "to think about this some more" and that it would decide appellant's
punishment the next day.

 The next day, May 2, 2002, the trial court offered appellant a ten-year prison sentence "pretty
much in the nature of a plea bargain agreement" and stated that, if he did not accept this offer, then
it would be necessary "to go forward with the enhancement counts." Appellant asked what
"enhancement counts" meant, and the trial court explained them to him. Appellant did not accept
the ten-year offer and informed the trial court that his lawyer told him that he would receive
probation if appellant pled guilty. Appellant stated that this was the only reason he pled guilty. 
Appellant's lawyer denied telling appellant that he would get probation if he pled guilty and
informed the trial court that he told appellant that probation was a "possibility" if appellant pled
guilty. Appellant continued to insist that his lawyer told him that he would receive probation if
appellant pled guilty. The trial court stated that it did not believe that. Appellant asked the trial
court if he could "start over on this," and the trial court replied that he could not. The trial court
sentenced appellant to a 12-year un-enhanced sentence to which the State did not object.

 [TRIAL COURT]: I have come up with a proposed solution on the matter that I've
discussed with defense counsel and with the State this morning, and just pretty much
in the nature of trying to dispose of the case to see whether it would be agreeable to
both sides and proceed, I guess, almost in the nature of a plea bargain agreement to
where we would do 10 years TDC instead of going forward with the enhancement
provisions, and if we did that, if we did 10 TDC, as I mentioned, it would be pretty
much in the nature of a plea bargain agreement, and if it wasn't an actual agreement
by the State and the Defense, then it would be un-negotiated.

* * *

 And you understand if we do it that way, that that would basically end the case. It
would be 10 years TDC, and the Court would not proceed to the issues concerning
the enhancement counts and that sort of thing. But if this settlement offer that I guess
I'm making is not accepted, then if it's still going to be litigated or still fought over,
then I guess we need to go forward with the enhancement counts.


 [APPELLANT]: What does that mean, enhancement counts?


 [TRIAL COURT]: The enhancement counts, the cases that make you a habitual
criminal. It would make it a minimum of 25 to do. So, you know, whatever you-all
want to do, it is okay with me. I am making that settlement offer in terms of this
deal.

* * *

 [APPELLANT]: If I don't take the 10 years, I don't have another chance at a new
attorney? I want to get a new attorney. I don't have another chance at renegotiating
this whole case down the line? It has to be 25 minimum?

* * *

 Your Honor, he led me to believe that if I pled guilty yesterday that I would get
probation. That is the only reason I got up there and said I was guilty.

* * *

 [TRIAL COURT]: Counselor, your client here has made the allegation that you told
him if he pled guilty, he would get probation. Is that what you told him?


 [APPELLANT'S LAWYER]: I told him that it was a possibility, Your Honor.

* * *

 [APPELLANT]: I'm sorry, sir, but he told me there would be no TDC time.


 [TRIAL COURT]: I don't think that's true. I don't believe it.


 [APPELLANT]: Did you say that, sir?


 [APPELLANT'S LAWYER]: No, I did not.


 [TRIAL COURT]: I'm sure he told you that it was a possibility you'd get probation.


 [APPELLANT'S LAWYER]: In fact, this morning Your Honor, I went in and I said
the other option that I felt was very likely was possibly SAFP (6) and some TDC time.


 [APPELLANT]: No, you said SAFP, nine months.


 [APPELLANT'S LAWYER]: Well, SAFP is a prison term and it has drug treatment
with it. And I said I don't know what the Court is going to do. I have absolutely no
idea.


 [TRIAL COURT]: And he asked me about that, and I said that I would not do that.


 [APPELLANT]: He did say that this morning.


 [TRIAL COURT]: He said that was a possibility and everything. I told him this
morning when he asked me about it that I would not do that.


 [APPELLANT]: Well, what are my options? Don't I have a right to start over on
this?


 [TRIAL COURT]: No.


 [APPELLANT]: Because I got up there and pled guilty?


 [TRIAL COURT]: That's correct. The Court does not have to set this over again.

* * *

 [TRIAL COURT]: Is there any reason you can state to the Court as to why you
should not be sentenced right now?


 [APPELLANT]: Because I was misled.


 [TRIAL COURT]: I don't believe that's true.

* * *

 I am going to go ahead and sentence you at this time to 12 years TDC. I am not
going to proceed on the enhancement counts. I'm still going to give you that break. 
We'll just proceed on it as a robbery. I've found you guilty of robbery. It is a
second-degree felony. I am not going to proceed on the habitual counts.


 On Monday, June 3, 2002, which was the last day that a notice of appeal or a motion for new
trial could have been timely filed, appellant's lawyer faxed to the court coordinator an unsworn
document entitled "Motion for Appeal." (7) This motion was filed with the district clerk the same day. 
This motion requested the trial court to allow appellant to withdraw his guilty plea because "[p]rior
to the Court's sentencing, there was in both the attorney and the Defendant's mind, through
communications made between he and his attorney, the belief that the Court would allow the
Defendant to withdraw his pleading should the Court not provide a sentence acceptable to the
Defendant outside the plea bargain [of a 17-year sentence] offered by the State." This motion
alleged:

 The Court entered a judgment of sentence on May 3 [sic], 2002 for twelve years in
the Texas Department of Corrections. Prior to the Court's sentencing, there was in
both the attorney and the Defendant's mind, through communications made between
he and his attorney, the belief that the Court would allow the Defendant to withdraw
his pleading should the Court not provide a sentence acceptable to the Defendant
outside the plea bargain offered by the State. The State had previously offered
seventeen years and the Defendant, by and through his attorney, had elected to go to
the Court for sentencing outside the plea negotiation. The Defendant had been told
by his attorney . . . that he would be permitted to withdraw his plea should the
sentence provided to him by the Court not be acceptable to him. (8)


 In fact, what happened on May the 3rd [sic] was that the Court, before sentencing was
imposed, was asked by the attorney whether or not the Defendant would be entitled
to withdraw his plea if the sentence was not acceptable. The Court at that time
indicated that the plea could not be withdrawn and that the Court would not allow the
Defendant to withdraw his plea. The Defendant entered the courtroom from the jail
holding tank and before any opportunity took place to explain to the Defendant that
he was not going to be permitted to withdraw his plea, the Defendant was asked
whether there was any reason why sentence should not be imposed and answered that
he knew of none.


 WHEREFORE, the Defendant requests that the Court now permit him to withdraw
his plea and to have the opportunity to have his case tried before the Court.


 The trial court interpreted appellant's "Motion for Appeal" as a motion for new trial. The
record does not reflect that appellant ever requested a hearing on this motion, and the trial court did
not hold a hearing or make an express ruling on it. The motion was overruled by operation of law. (9) 
Appellant's lawyer failed to timely perfect an appeal from the trial court's judgment even though the
trial court indicated that appellant had the right to appeal and appellant indicated his desire to appeal.

 Appellant filed a pro se post-conviction application for writ of habeas corpus in January
2006, almost four years after the trial court sentenced him. (10) This application raised various claims
including a claim that he was entitled to an out-of-time appeal. (11) This Court granted appellant
habeas corpus relief in the form of an out-of-time appeal and dismissed his other claims without
addressing their merits. See Ex parte Rouse, No. AP-75,551 (Tex.Cr.App., delivered November 15,
2006).

 Following this decision, appellant filed an out-of-time motion for new trial in the trial court
alleging that his guilty plea was involuntary because his lawyer "deceived" appellant into entering
his guilty plea and "failed to properly advise [appellant] as to the law and facts applicable to this
case." Though the record reflects that this motion was "presented" to the trial court, there was never
any hearing or ruling on it, and it was overruled by operation of law.

 Appellant timely perfected an out-of-time appeal to the court of appeals. Appellant claimed
in this out-of-time appeal that his guilty plea was involuntary (point one) (12) and that his lawyer was
ineffective by misleading him into believing that he would get probation if appellant pled guilty
(point two). (13) Appellant's involuntary-guilty-plea claim in his out-of-time appeal was not predicated
on the trial court's participation in plea negotiations or on the allegations in the "Motion for
Appeal." (14)

 However, in disposing of appellant's first point of error, the court of appeals relied on the
allegations in the "Motion for Appeal" and on the trial court's participation in plea negotiations to
decide that appellant's guilty plea was involuntary. In reaching this decision, the court of appeals
pointed to evidence in the record that could support a fact finding that appellant's guilty plea was
involuntary (15) and concluded:

 In the instant case, appellant's trial counsel, who had abandoned him on appeal,
directly admitted in the "motion for appeal" that he had given appellant erroneous
information about the withdrawal of the guilty plea, that appellant was of the belief
that he could withdraw his plea at will, and that counsel never corrected the
misinformation after counsel learned the contrary. Such significant misinformation
was outside the competency of counsel in criminal cases. Further, the record
confirms that appellant acted in accordance with such misinformation to his
detriment. Additionally, the trial court engaged in plea bargaining with the implied
threat of greater punishment if its plea bargain were rejected. When appellant
rejected the plea bargain, apparently relying on counsel's misinformation, the trial
court in sentencing, added two years to the plea offer. The record as a whole shows
appellant's guilty plea was not freely, voluntarily, knowingly, and intelligently
entered that [sic] appellant was not accorded due process and due course of law,
which is the overriding concern.


See Rouse, slip op. at 19-20. (16)


 We exercised our discretionary authority to review this decision. The grounds upon which
we granted discretionary review are:

 May an appellate court, in deciding that a plea was entered involuntarily, rely on
unsworn allegations made by trial counsel in a document that was faxed to the court
coordinator, and later filed with the district clerk, when no fact-finder has evaluated
that statement?


 When a defendant enters an open plea of guilty and the trial court, after admonishing
the defendant, accepts the plea and finds the defendant guilty, does the trial court's
subsequent offer of a non-negotiated sentence-settlement constitute judicial coercion
or judicial plea-bargaining affecting the voluntariness of the defendant's guilty plea?


(Emphasis in original).

 The State argues that the court of appeals erroneously relied on the "Motion for Appeal" in
deciding that appellant's guilty plea was involuntary because this pleading was never introduced into
evidence at any hearing for the trial court, as the fact-finder, to evaluate. The State claims that
appellant's involuntary-guilty-plea claim is "prematurely addressed on direct appeal" and that this
Court should reverse the court of appeals' decision so that a fact-finder may properly evaluate this
claim on a more fully developed record in a habeas corpus proceeding. (17)

 We decide that the court of appeals erred to rely on the allegations in the "Motion for
Appeal" because post-trial motions such as these are not self-proving and any allegations made in
support of them by way of affidavit or otherwise must be offered into evidence at a hearing. See
Lamb v. State, 680 S.W.2d 11, 13 (Tex.Cr.App. 1984); see also McIntire v. State, 698 S.W.2d 652,
658 (Tex.Cr.App. 1985) (orig. op.) (affidavit may be sufficient to establish every facet of a
cognizable ground for a new trial and accused may have such affidavit introduced into evidence and
the "matter may be resolved exclusively on that basis" but "a hearing is required" in order to
introduce the affidavit into evidence) (emphasis in original); Jackson v. State, 139 S.W.3d 7, 19-21
(Tex.App.-Fort Worth 2004, pet. ref'd). This rule is based, in part, on permitting the non-moving
party an opportunity to respond to these allegations before a conviction is reversed on their basis. 
Cf. Hailey v. State, 87 S.W.3d 119, 121-22 (Tex.Cr.App. 2002) (intermediate appellate court would
violate ordinary notions of procedural default to reverse a trial court's decision on a theory not
presented to the trial court); Lamb, 680 S.W.2d at 17 (Onion, P.J., concurring in part and dissenting
in part) ("If the court had found merit in the contention by reviewing the affidavits, would this court
have been justified in reversing without there having been a hearing on the motion for new trial and
without the State being heard?").

 We also disagree with any suggestion in the majority opinion in Lamb that this rule does not
apply to new trial motions that "implicate[] federal constitutional issues." See Lamb, 680 S.W.2d
at 13 (reviewing "in the interest of justice" allegations in motion for new trial and supporting
affidavit that were never introduced into evidence at a hearing) and at 17 (Onion, P.J., concurring
in part and dissenting in part) ("I concur in the result reached. I dissent vigorously to the action of
this court in disposing of ground of error number one by considering affidavits, etc., which were not
properly before the trial court. It makes no difference whether the issue is a federal constitutional
issue or a state constitutional issue or whatever. If the court had found merit in the contention by
reviewing the affidavits, would this court have been justified in reversing without there having been
a hearing on the motion for new trial and without the State being heard? This departure from
established procedure is wrong. The fact that the case carries the death penalty should not authorize
departure. Will we hear again about what this court does today?").

 In addition, we do not see how any "plea-bargaining" by the trial court concerning appellant's
punishment could have influenced appellant's decision to enter an "open" plea of guilty the day
before. (18)

 The judgment of the court of appeals is reversed, and the case is remanded there for further
proceedings not inconsistent with this opinion.


 Hervey, J.


Delivered: December 9, 2009

Publish
1. See Ex parte Battle, 817 S.W.2d 81, 83 (Tex.Cr.App. 1991) ("A defendant's election to plead
guilty or nolo contendere when based upon erroneous advice of counsel is not done voluntarily and
knowingly.").
2. See Ex parte Williams, 704 S.W.2d 773, 777 n.6 (Tex.Cr.App. 1986) (trial judge should not
participate in plea discussions or negotiations until an agreement has been reached between a
defendant and the State); Ex parte Shuflin, 528 S.W.2d 610, 616-17 (Tex.Cr.App. 1975) (American
Bar Association standards (not adopted in this State) that a trial judge should not participate in plea
discussions "until tentative agreement has been reached" are meant "to avoid even the appearance
of judicial coercion or prejudgment of the defendant by the court").
3. See Tex. Pen. Code, §§ 12.33, 29.02. 
4. The second paragraph of the indictment alleged that appellant had been convicted in Hays
County of the felony offense of burglary of a habitation on September 23, 1988, "which conviction
had become final before the commission of the offense alleged in the preceding paragraphs or
counts[.]" The third paragraph of the indictment alleged that appellant had been convicted in Travis
County of two felony offenses of burglary of a habitation (cause numbers 92,193 and 92,194) on
June 24, 1988, "which convictions had become final before the commission of the offense alleged
in the preceding paragraphs or counts." As to the third paragraph, the court of appeals stated:


 There were no allegations as to the priority of the two convictions, both occurring on
the same date. There were no allegations as to sequence. See [§ 12.42(d)]. The State
apparently believed that the indictment gave adequate notice to appellant and that it
would prove the sequence required during trial in order to establish appellant as a
habitual offender.


See Rouse v. State, No. 03-07-00214-CR, slip op. at 2 n.2 (Tex.App.-Austin, June 27, 2008) (not
designated for publication).
5. Appellant testified at this hearing that, while in the course of committing theft of property
with the intent to obtain and maintain control of the property, he caused bodily injury to a person by
pushing her on and about her arms and torso and kicking her on and about her legs. His brief on
direct appeal stated:


 Viewing the evidence in the light most favorable to the court's verdict the record
reflects that on January 11, 2002, Selene Asura was in the Eckerd Drug Store at 3201
Bee Caves Road when she observed Appellant, Jeffery [sic] Rouse, shoplift a camera
and perfume. She advised a clerk, Luis Martinez, who followed Appellant out of the
store. Asura grabbed Appellant by the jacket and told him to return to the store and
pay for the items. Appellant pulled away and kicked Asura on her right leg and knee. 
Asura screamed for help and Martinez called 911. Two bystanders held Appellant
until the police arrived.
6. SAFP is a substance-abuse felony punishment facility within the Texas Department of
Criminal Justice.
7. The trial court imposed appellant's sentence on May 2, 2002. Appellant, therefore, had until
Monday, June 3, 2002, to timely file a notice of appeal or a motion for new trial. See Tex. R. App.
Proc. 4.1(a), 21.4(a), 26.2(a).
8. The allegations in the "Motion for Appeal" are not clear on whether appellant's lawyer
conveyed this advice before appellant pled guilty or after appellant pled guilty but prior to
sentencing. The court of appeals' opinion states that appellant's lawyer "conveyed this advice to
appellant prior to the guilty plea." See Rouse, slip op. at 13, footnote 15. The State, however, argues
on discretionary review that appellant's guilty plea could not have been premised on this advice if
appellant's lawyer "conveyed this information to [appellant] after he entered his plea, the following
day when they reconvened for the judge to assess punishment." The State further argues that, in any
event, "the record is incomplete at this stage." The State argues:


 In this case, [appellant's] counsel has had no opportunity to explain the advice he
gave [appellant] and what factors went into [appellant's] decision to enter his open
plea. Even if trial counsel's statement [in the "Motion for Appeal"] is accepted as
true, it does not necessarily imply that [appellant] entered his plea involuntarily. 
Counsel could have conveyed this information to [appellant] after he entered his plea,
the following day when they reconvened for the judge to assess punishment. If this
was the case, then [appellant's] entry of his open guilty plea, the previous day, could
not have been premised on this misinformation. More importantly, at the hearing,
[appellant's] repeated complaint was that he thought he would get probation, not that
he could just withdraw his plea if he did not like the trial court's sentence.
[Appellant] had no hesitation in accusing counsel of misleading him that he would
get probation, and yet at no time did he accuse counsel of telling him that he could
withdraw his plea. In either case, the record is incomplete at this stage. 
9. See Tex. R. App. Proc. 21.8(c).
10. This application asserted that he was on parole when he was arrested for the instant second-degree-felony robbery offense on January 11, 2002. It also asserted that appellant retained counsel
"to represent him in the instant case, at the pending parole revocation, and in a pending Williamson
County misdemeanor shoplifting case." 
11. Appellant also claimed that his guilty plea was involuntary because his lawyer misled him
into believing that he would get probation if appellant pled guilty. Appellant presented no claim that
his guilty plea was involuntary because of the trial court's participation in plea negotiations or
because of the allegations in the "Motion for Appeal."
12. In support of his involuntary-guilty-plea claim in point of error one, appellant argued in his
brief on appeal:


 It is clear from this record that Appellant was never clear about the proper range of
punishment and there seems to even have been serious confusion on the part of all
parties as to the correct possible range of punishment if this case had proceeded to
trial on the indictment as presented by the grand jury. The trial court again treated
this as a possible habitual case under [§ 12.42(d)] when in fact at most this was a
case enhanced under [§ 12.42(b)]. There is also a serious question as to exactly what
advice was given to Appellant by his counsel as to the ultimate disposition of the
case. In the present state of the record it can not be said that Appellant's plea of
guilty was knowingly and voluntarily entered.
13. In support of his ineffective assistance of counsel claim in point of error two, appellant
argued in his brief on appeal:


 Although outside the present record Appellant's counsel is aware of additional
independent evidence to support Appellant's claims that he was repeatedly promised
that in exchange for his fee of $10,000.00 Appellant would not be sentenced to prison
but would receive probation and drug treatment.
14. Appellant also claimed in another point of error (point of error three) that the trial court erred
in not holding a hearing on his out-of-time new trial motion after this Court granted appellant an out-of-time appeal. The court of appeals rejected this claim, and appellant did not petition this Court to
review this decision. See Tex. R. App. Proc. 68.2; Rouse, slip op. at 9 ("it is difficult to fault the
trial court for lack of action because of the conclusory nature of the motion [for new trial] and
affidavit").
15. See Rouse, slip op. at 13 (counsel confessed in the "Motion for Appeal" that prior to the
guilty plea he conveyed erroneous advice to appellant that appellant "would be permitted to
withdraw his [guilty] plea should the sentence provided to him by the court not be acceptable to
him") (emphasis supplied) and at 14 ("Supporting counsel's assertion that he believed appellant
could legally withdraw his guilty plea at will if the penalty assessed was unacceptable is the fact that
counsel never entered into any plea bargaining discussion with the State" and a "number of
appellant's personal remarks in open court during the plea proceedings support the fact that appellant
had been given erroneous advice about the withdrawal of the guilty plea" while "[s]till other
evidence clearly reflects appellant's lack of full understanding of what the plea connoted and the
consequences thereof" and "[a]ppellant's remarks also indicated that he was unsure that his actions
constituted robbery as a matter of law") and at 17 ("Some of the strongest evidence that appellant
was given erroneous advice about plea withdrawal is the fact that appellant rejected the ten-year plea
bargain offered by the trial court even in the face of an implied threat of finding appellant a habitual
criminal.").
16. The court of appeals sustained the first point of error and did "not reach the second point of
error, alleging ineffective assistance of counsel." See Rouse, slip op. at 20.
17. See Cooper v. State, 45 S.W.3d 77, 82 (Tex.Cr.App. 2001) ("[e]xperience has shown us that
most cases of involuntary pleas result from circumstances that exist outside the [appellate] record,
such as misunderstandings, erroneous information, impaired judgment, ineffective assistance of
counsel, and plea-bargains that were not followed or turn out to be impossible of performance" and
that meritorious claims of involuntary pleas may be raised by procedures other than direct appeal
such as motion for new trial and habeas corpus which are superior to direct appeal "in that the claim
may be supported by information from sources broader than the appellate record").
18. The State argues:


 The trial court's actions, in trying to come to a sentence-agreement [sic], did not
coerce [appellant's] entry of his open guilty plea. [Appellant] made his plea the
previous day after repeated admonishments by the trial court. [Appellant]
acknowledged that his plea was un-negotiated and that no agreement had been
reached with the State, thus leaving the punishment up to the judge. Any subsequent
actions by the trial court did not invalidate the entry of the plea.